*J. F. & C. H. Fiske,* for appellant.

*W. K. Benton,* for appellee.

---

NATIONAL MUTUAL BENEFIT *v.* ELIZABETH JONES, ET AL.

[Abstract Kentucky Law Reporter, Vol. 7—751, 759.]

**Forfeiture of Rights Under Insurance Policy.**

Where a policy holder in a mutual insurance company under the rules of the company is required on notice of the death of a member to make a small designated payment to the company within thirty days, and fails to do so, his membership may be forfeited and can only be reinstated by payment accepted, together with certificate that the member is in good health; but where the company, after such right to declare a forfeiture continues to send notices to a member of assessments and continues without question or certificate to accept payments from the member, it thereby waives its rights thereafter and after the death of the member to set up such forfeiture to defeat the beneficiaries under the policy from recovery.

APPEAL FROM LOUISVILLE CHANCERY COURT.

April 27, 1886.

OPINION BY JUDGE LEWIS:

Appellees, the widow and children of Thomas, deceased, brought an action to recover on a policy of insurance issued for their benefit in his name February 18, 1879, by appellant, The National Mutual Benefit Association, a corporation created by act of the general assembly approved April 27, 1878. Judgment having been rendered in their favor for $3,317.48 the company has appealed, and they also prosecute a cross-appeal. As the amended answer conformed to the facts proved, and did not substantially change the defense, and the filing of it was clearly in furtherance of justice, the chancellor did not err in setting aside the order of submission and permitting it to be filed, particularly as time was afforded to the plaintiffs to take additional evidence bearing upon the question. Moreover, we are induced to think that even without the amendment the plaintiffs could not have under the charter recovered more than was adjudged, for, admitting as stated in the petition that the assessment would have produced $4,000, a deduction of twenty per cent. is required by the charter therefrom.

The first ground of defense to the action is falsely representing himself at the time he applied for membership, the policy being issued to him as being a man of sober habits. Even if there were sufficient evidence to sustain the allegation it would not necessarily follow that the company, after having received and appropriated for an uninterrupted period of five years all fees and assessments it was entitled under its charter to collect of the insured, could after his death resist payment to the beneficiaries mentioned in the policy. But it is not necessary to determine that question, as there is a failure of proof to establish the fraud alleged.

The principal ground of defense is the failure on the part of the assured, Jones, to pay within the time required by the charter an assessment made, a notice of which he received February 2, 1883. By § 6 of the charter it is provided that on notification by the secretary of the death of any member each surviving member shall pay into the treasury within thirty days from the date of the notice the mortuary fee stipulated in the certificate of membership, which sum constitutes a fund to be paid within sixty days from the date of proof of loss by the legal heirs or beneficiary of the deceased member, less twenty per cent. to be deducted for permanent fund and expenses. Section 7 provides that "any member failing to pay his assessment

within thirty days as provided in § 6 shall forfeit his membership, and all benefits arising therefrom, but he may be reinstated by the board if an application is made in writing accompanied with a medical certificate of continued good health within twelve months from date of forfeiture." Jones, the decedent member, did not pay the assessment in question on March 3, 1883, which was the last day of payment under the charter; and according to the literal terms thereof his membership was forfeited; nor was an application in writing to be reinstated even made to him in due form, for he died on April 17, 1883. There is also evidence tending to show that he was not in good health when the forfeiture accrued, being afflicted with a fatal malady contracted a few months previously and of which he died.

But he did pay the assessment on March 31, 1883, and the secretary of the company, whose duty and business it was to receive assessments, gave to him a written receipt therefor. There were also other assessments afterwards made upon him which he paid and obtained a receipt for from the secretary, the last one made being April 10, 1883. The simple inquiry then is whether, a forfeiture having occurred, the insurance company did anything thereafter which should be regarded as a waiver of it or by which it should be now held estopped to resist payment to the beneficiaries of the policy. The evidence is conclusive that Jones did in person, on March 31, pay off the assessment made February 2, 1883, and Keller, who was the custodian of the books, records and funds of the company, and invested with authority to receive and receipt for all money, gave him a receipt acknowledging in full and without condition the acceptance of the payment; and the company thereafter appropriated and used it, never offering to return it nor the subsequent payment until after his death and the commencement of this action.

It is true Keller testifies that at the time of the payment on March 3 there was a verbal agreement made by Jones that he was in good health and that the payment was made on the faith of such assurance by him. He undertakes to explain his failure to insert in the receipt the condition upon which the payment was received by stating that the stamp which was used to print on each receipt the condition that the member was in good health was on that occasion lost or mislaid, and that although he was unacquainted with Jones at the time and now expresses some doubt as to his identity, he accepted

the payment without any condition or assurance other than the mere verbal declaration of a stranger that he was in good health. If the testimony of the secretary and treasurer is to be accepted as true there has evidently not been such system and strict adherence to the charter in the conduct of the business of the company as is now asked to be enforced against the beneficiaries of the deceased member. There is no reason why we should doubt the testimony of numerous witnesses given in this case showing that it was the custom of the company through its secretary and treasurer to receive from members who had forfeited their policies overdue assessments without question or condition.

It does not now avail the company to say in defense of this action that the charter provides a special mode in which a member may be reinstated, and that the act of the secretary and treasurer in receiving assessments after forfeitures had occurred was not authorized by the president and board of directors, for he has done so in so many cases and so uniformly since the organization of the company as to render it certain the chief officers were aware of and approved it. It has come to be so generally the practice and custom that it can not now be disavowed or avoided without bad faith toward those who have been misled by it. It has been often and justly said that forfeitures are so odious in law that they will be enforced only when there is the clearest evidence that such was the intention of the parties. "If the practice of the company and its course of dealings with the insured and others known to the insured have been such as to induce a belief that so much of the contract as provides for a forfeiture in a certain event will not be insisted on the company will not be allowed to set up such forfeiture as against one in whom their conduct has induced such belief." May on Insurance 361. In our opinion the proof clearly authorizes the application of that rule in this case, for not only did the company accept from Jones the overdue assessment, but subsequently recognized him as a member in good standing and received from him other assessments which he was notified to pay and did pay.

All of this we are bound to presume was done with the knowledge and by the direction of the chief officers, or else assume that the business is conducted carelessly and in bad faith to the members. As the company refused to pay to appellees the amount due them on the policy the chancellor properly rendered judgment therefor.

Wherefore the judgment is *affirmed* on the appeal and cross-appeal.

*Bullitt & Harris, Helm & Bruce, for appellant.*

*Sterling B. Toney, for appellees.*