THE GREAT WESTERN MUTUAL AID ASSOCIATION v.
COLMAR.

1. INSURANCE—FORFEITURE.

Where the condition is " if the assured shall * * * within forty days
after receiving due notice fail to pay * * * the assessments * * * the
association shall not be liable for any sum whatever," the computa-
tion of time must be from the date insured received notice and not
from the date of the notice or from the time it was mailed.

2. SAME—FORFEITURES.

Forfeitures are to be closely scrutinized, and are not favored.

3. SAME.

A forfeiture of insurance on the ground of nonpayment of an assessment
to be available must have been asserted while the insured was delin-
quent.   After receipt of the money it is too late to declare a for-
feiture.

4. SAME—MANDAMUS.

Mandamus does not lie to compel a mutual benefit insurance company
to levy an assessment to pay the amount falling due upon the death
of a member.   The proper course is to bring suit upon the under-
taking of the company.

*Appeal from the District Court of Arapahoe County.*

Messrs. CARPENTER & McBIRD, for appellant.

Mr. E. L. DICKERSON, for appellee.

REED, P. J., delivered the opinion of the court.

Appellee brought suit against the appellant to recover
$1,500, or 75 per cent of the sum of $2,000, on a policy or
certificate of insurance executed upon the life of appellee,
delivered the 8th day of February, 1881.   By the terms of
the contract, the amount was to be paid to insured after the
expiration of twelve years from date in case the insured was
still living, and upon his death, before that time.

The complaint alleges the payment of $15.00 on the day
of the date of the policy, compliance on the part of the

insured with all the requirements of the contract, that the time (twelve years) had expired, that the insured was still living, demand for the sum for which suit was brought, and refusal of appellant to pay.

The company (appellant) was a mutual concern, in which, in case of the death of a member, calls or assessments were made upon the individual members to pay the policy of the deceased member.

The defense relied upon in answer was that the plaintiff failed to pay a call made and due June 21, 1892, and another on the 4th of August, 1892, and " that thereafter, and by reason of the violations aforesaid, the said certificate of membership ceased and determined, and the plaintiff was no longer treated or regarded as a member of this association, and said certificate of membership, and the insurance or endowment thereunder, from thence hitherto has not been, and is not now, in force, nor the plaintiff entitled to any of the benefits thereof."

Trial was had to a jury, and, at the close of the evidence, plaintiff asked the court to instruct the jury to find for the plaintiff, which motion was granted, and a judgment for plaintiff for $1,500 entered, from which this appeal was prosecuted.

It appears that for about eleven years and a half the contract of insurance was in force and unquestioned. The insured had paid all demands, six months before it would expire, and the insured be entitled to all its benefits. It is claimed that the insured made such default in payment of assessments as to warrant the company in declaring it forfeited and in refusing to renew *on account of the age* of appellee. Condition No. 3, upon which the supposed forfeiture was based, is as follows : " If the assured shall, at any time, within forty days after receiving due notice, fail to pay, or cause to be paid, the assessments at the office of the association, and in accordance with the rules and regulations of said association, then, and in every such case, the association shall not be liable for the payment of any sum whatsoever,

and this certificate shall cease and determine." Condition
No. 5 is : " A printed or written notice directed to the ad-
dress as last given by a member and deposited in the post-
office, or delivered by an agent of the association, shall be
deemed a legal notice."

The only witness sworn was one A. H. Northrop, who tes-
tified for the defendant, was employed by it, and had been
for six or seven years.  He identified the different papers.
His knowledge was very limited and evidence very indefi-
nite.   He said : " I am testifying from the records of my
office.   It would be a matter of impossibility to testify from
my own memory in a matter of dates and figures such as
this, regarding dates, numbers or assessments I could not
remember."   As the whole defense or forfeiture depended
upon dates, numbers and assessments, it was important that
the facts be established from better data than inference from
the usual course of business and files in the office.   It appears
from the dates on files in the office and the testimony of the
witness that three assessments of $1.00 each were made and
embraced in a notice dated May 13, 1892, in response to
which appellee sent $2.00, leaving $1.00 unpaid.   Witness
testified that the $2.00 paid was not within the forty days,
but he did not show when it was received ; but it appears to
have been accepted and retained, and that no notice was
taken of the default at that time or that appellee's attention
was called to it.   Subsequently another notice of assess-
ments for $2.00 was sent to appellee, dated June 25, 1892,
which was remitted ; also the former dollar until then un-
paid.   Witness testified it was received one day too late.
It should have been at the office *August 4th, but was not
received until the 5th.*   Here is a discrepancy I fail to under-
stand, which shows the want of knowledge on the part of
the witness, or the unreliable character of his evidence.
The letter containing the remittance from appellee was
dated " *Durango, 15th Aug.*"   The reply of the company
put in evidence, is dated *August 17th,* in which it is said,
" *Which we this day received.*"   That reply contained the

$3.00 received and the $2.00 received in response to the call of May 13th, which had been retained from some time in June, and appellee was then informed that he had forfeited his insurance, *and* " that on account of your age it will be impossible for us to reinstate." The learned district judge found the alleged notices sent to appellee void and insufficient, and with this we agree. If they were sent, the uncertainty of the evidence establishing the time they were sent and the date of receipt of money was so vague and indefinite as to be worthless to establish a default. The $2.00 in response to the May call were received about June 21st and retained until August 17th. The default of $1.00 existed all that time, and was either waived or overlooked. The witness said the "money was received conditionally." We are not informed what the conditions were, and there is no evidence of notice to appellee of a conditional acceptance, a forfeiture of insurance, or demand for the payment of the $1.00 in default. Witness testified : "We always send as much as two notices." There was no evidence of a second notice in either instance to the appellee.

In regard to the second case, witness testified the money came one day too late. Taking the date of the notice, June 25th, and the day of payment, August 5th, excluding one date and including the other, there was no default. The witness testified that the notice bearing date June 25th would be sent out from the 24th to the 26th. Thus the date of sending or mailing, and not the date upon the paper, becomes important. There is also a very marked discrepancy between the testimony of the witness to establish a default, the notice put in evidence, and condition No. 3 of the contract, upon which the forfeiture is supposed to be based. In the notice sent is the following : " By referring to the conditions of your certificate of membership, you will observe that the assessment made for the following deceased members, *must be received within forty days from May 13th,* 1892 (the date of the notice), *or not later than June 21st,*" regardless of the date of sending. This shows great igno-

rance of the *condition* relied upon for the forfeiture. The language of the condition is : " If the assured shall at any time within forty days *after* receiving due notice fail to pay or cause to be paid the assessments," etc. It will readily be seen that the computation of time cannot be determined by the date upon the notice, nor from the date of mailing, if such proof was offered, but must be computed from the date the insured received due notice. See *Grand Lodge v. Besterfield,* 37 Ill. App. 522. Hence we conclude that as to the last assessment of $2.00 no default was proved.

Forfeitures must be clearly established. They are defenses closely scrutinized and not favored by courts. As to the supposed forfeiture by failure to pay the $1.00, the claim seems technical and trivial. To have been available, it must have been asserted while the insured was delinquent. Having, during all that time, waived the default, and followed up by a subsequent assessment, it was too late, after-receiving the money, to go back and declare forfeiture. Authorities in support of these positions are numerous. See Niblack on Mut. Ben. Soc., secs. 339 and 345 ; *Chicago Life Ins. Co. v. Warner,* 80 Ill. 410 ; *Mutual Life Ins. Co. v. Amerman,* 119 Ill. 329 ; *Viall v. Genesee Mut. Ins. Co.,* 19 Barb. (N. Y.) 440 ; *Swertser v. Odd Fellows' Assn.,* 117 Ind. 97 ; *Nat. Mut. Ben. Assn. v. Jones,* 84 Ky. 110 ; *Life Ins. Co. v. American,* 16 Ill. App. 528 ; *Life Ins. Co. v. Pierce,* 75 Ill. 426 ; *Ins. Co. v. Hazlett,* 105 Ind. 112.

It is next contended that appellant, being a mutual insurance concern, and having contracted in this language, " Does assure the life of Martin Colmar in the amount of such sum as will equal 75 per cent of the amount collected of the assessment made for the payment thereto, but not to exceed two thousand dollars," that in suing for the amount that he was insured, or for $1,500, he had mistaken his remedy; that it should have been a proceeding by mandamus to compel the company to make an assessment to pay the claim. 2d. That if the plaintiff is permitted to sue the association and recover a money judgment, he must allege and show the

amount that would be realized by an assessment and have a verdict for only such amount. 3d. That he must prove a demand for an assessment and the refusal of the association to make it. 4th. That he must aver the number of members subject to assessment for his benefit. 5th. Or must show that an assessment has been made and collected.

Several authorities are cited in support of these positions, some of which, particularly those from the state of Iowa, sustain the contention; but those decisions were by a divided court. In others cited, the contracts were different; the amount to be realized was $1.00 to each member. Here there was no restriction as to the amount that could be assessed against each member shown or claimed. Presumably the amount to be assessed upon each member would be sufficient to make the aggregate amount required. Nor can we agree to the proposition that mandamus was the proper remedy. The amount assured might possibly, under the peculiar wording of the contract, be reduced and limited by the amount of the assessment collected. If not sufficient, it should be matter of defense. Nor could the plaintiff reasonably be required to make proof, where the data was entirely within the control of the defendant, as to the number of members and the amount that could be collected by an assessment.

By the contract of insurance it was the duty of the officers to make an assessment when the payment was due. There is nothing in the contract compelling a party to resort to a proceeding by mandamus to make them perform such duty. The contract for payment having matured and the money being due, it was their only duty to provide funds, more or less, and pay the claim. The contract is absolute to pay within ninety days after proof of death *or the lapse of the time named.* As shown by the evidence, forty days was required to collect the assessment, giving fifty remaining days in which to pay. The power of the corporation to make the assessment could be exercised voluntarily. It did not depend upon a mandamus to set it in motion. The evidence

shows that the voluntary exercise of it had been the course pursued.   It does not appear that in any former case parties had been required to bring a compulsory suit.

On a contract identical with the one under consideration and those of the same character, or nearly identical, the authorities are numerous in support of the views announced above.   See Niblack on Mut. Ben. Soc., secs. 388, 392, 394 to 401 ; 2 May on Ins., sec. 563*a* ; *Freeman v. Nat. Ben. Soc.*, 42 Hun (N. Y.), 252 ; *Oriental Ins. Co. v. Clancey*, 70 Md. 101.   *Bates v. Detroit Mut. Ben. Assn.*, 47 Mich. 646, where it is held : " Mandamus does not lie to compel a mutual benefit insurance company to levy an assessment to pay the amount falling due upon the death of a member.   The proper course is to bring suit upon the undertaking of the company." See, also, *Elkhart Assn. v. Houghton*, 103 Ind. 286 ; *Lodge v. Knights*, 117 Ind. 489 ; *Loeders v. Hartford Co.*, 4 McCrary, 149 ; *Kan. Pro. Assn. v. White*, 14 Pac. Rep. 275 ; *Kan. Pro. Union v. Gardner*, 21 Pac. Rep. 233 ; *O'Brien v. Home Ben. Soc.*, 117 N. Y. 310.

Several authorities hold that the suit should have been brought for the maximum, $2,000, instead of $1,500, and putting the burden of reducing it and showing the proper amount upon the defendant, but in this case the failure to sue for the full amount cannot prejudice appellant.

The judgment of the district court will be affirmed.

*Affirmed.*

### ON REHEARING.

PER CURIAM.   In the argument filed in support of the petition for a rehearing, counsel have urged one proposition in which they seem to have great confidence and on which they rely for a reversal of the court's conclusions.   We do not deem the matter of vital consequence, nor consider it available to the appellant on this hearing.   The point urged respects the sufficiency of the complaint in its statement of a cause of action.   Many cases are now cited as they were in the original brief, which sustain the contention that in an

action on a policy like that sued on, the pleader should allege the number of members who were associated in the organization subject to assessment, and introduce proof which would tend to show that if an assessment had been levied a sufficient sum would be produced to pay the amount of the certificate. Undoubtedly they are reputable authorities which hold the allegation essential to the statement of a cause of action, and likewise some evidence tending to establish it requisite to proof of the case. There is another line of equal repute which adjudges the allegation of the issuance of the certificate, the performance of the conditions on the part of the insured, coupled with the necessary proof to support the allegations, enough to make out a *prima facie* case for the plaintiff, which will put the burden to establish either a deficiency in the number subject to assessment, or in the amount of funds which would be produced, on the defendant company, in whose possession and under whose control are all the data necessary to make a defense if they see fit to plead such an issue. The principal opinion was not put on this basis, nor was there any extended discussion respecting it, though it cites the leading authorities which support the proposition that the burden is on the defendant company. It was not deemed essential to directly declare our convictions respecting the line which the court would follow in a case where the decision of this particular matter was indispensable. The court inclined to the view that the burden of proof lay with the defendant, who should plead the facts essential to maintain such an issue. Waiving, however, any express declaration on this question, it is not conceived the present case is brought within the scope of either of those lines of authorities, or that any adjudication respecting this particular point need be made. The complaint stated generally the issuance of the certificate, which was set out in *hæc verba*, and alleged the performance of all the conditions imposed on the defendant, which accords with the requirements of the special rule of pleading respecting contracts prescribed by the code. It also contained an allegation that the sum of

$1,500 was due and owing to the plaintiff on the agreement; that no part of it had been paid, though it had been frequently demanded and payment had often been requested of the defendant company.  It is important to bear this proposition in mind.  According to the abstract, the defendant did not demur to the complaint or take issue on any of its allegations.  The defense was a forfeiture and an alleged nonperformance by the plaintiff of a condition precedent, to wit, the payment of the assessments which had been levied on him.  The company did not otherwise contest the claim, and, failing to deny the allegations of the complaint, admitted them to be true.  Under these circumstances, we have a right to assume that the allegation of a debt due from the company, of the demand and refusal, to be a sufficient statement both of the existence of the requisite number subject to assessment to produce the sum sued for, and to mature the certificate according to its terms, and a refusal on the part of the company to levy any assessment to pay it.  Since this is true, we have a right to presume all these matters against the defendant, and to take this allegation as a sufficient statement of a cause of action, especially after a verdict in the plaintiff's favor.

This statement of the court's position was probably not essential to the decision, but it was deemed best to express it, because, in our judgment, it is a complete answer to the argument filed on the petition.

For the reasons stated in the original opinion, and on the basis of the authorities therein cited, the judgment will be affirmed and the opinion will be adhered to.

*Affirmed.*