## Crowe v. Miller.

(Decided June 5, 1931.)

ROUSE & PRICE, for appellant.

ORIE S. WARE, ELMER P. WARE, and JOHN E. SHEPARD for appellee.

OPINION OF THE COURT BY JUDGE BRATCHER—Affirming.

On the 28th day of March, 1930, the appellant, John M. Crowe, who was the plaintiff below, filed a petition in the Kenton circuit court alleging the appellee, A. R. Miller, was indebted to him in the sum of $6,250, "for money had and received from him on the second day of February, 1929, which the said A. R. Miller promised and agreed to repay." The petition further alleged that the appellee, Miller, was a nonresident of Kentucky, and that he was now absent from the state and had no property in this state subject to execution or not enough to satisfy plaintiff's debt, and made other allegations sufficient for, and did obtain, a general order of attachment, which was served upon Orie S. Ware, as a garnishee.

On the 27th day of May, 1930, the appellee, Miller, through his attorneys, Ware & Ware, moved the court to require plaintiff to make his petition more certain, which motion was sustained, and on the 3d day of June, 1930, he amended his petition and alleged "that on or about the second day of February, 1929, he loaned to A. R. Miller the sum of $6,250.00 at the request of

defendant and which defendant agreed and promised to pay him on demand,'' which he had failed and refused to do. Prior to the filing of this amended petition, Orie S. Ware, the garnishee, had filed his answer, in which he stated he had in his hands at the time of the service of the attachment the sum of $6,270, property of A. R. Miller, for which he is indebted to him.

On the 11th day of June, the defendant filed his answer in which he denied that the plaintiff, John M. Crowe, loaned him $6,250 or any other sum, or that he was indebted to him or had promised to pay him upon demand that sum or any sum. Cause was set for trial before the court without a jury. Evidence was introduced, at the completion of which defendant tendered and offered to file an amended answer conforming to the proof. The trial was stopped for a hearing upon the objection to the filing of the amended answer. The court entered this order:

"This case came on for trial before the Court without a jury. Evidence offered by the plaintiff was heard and the defendant offered in open Court an amended answer, to the filing of which plaintiff objects. Thereupon, this cause was remanded and submitted on the motion of the defendant to file said amended answer."

The motion was continued from time to time until the 6th day of November, 1930, at which time an order was entered overruling the objections, and the amended answer was filed.

This amended answer, after reiterating the denials of his original answer by the second paragraph, affirmatively pleads that on the 11th day of October, 1928, the Crowe Manufacturing Corporation of Kentucky entered into a contract with the Crowe Manufacturing Corporation of Delaware. By the terms of that agreement the Delaware corporation purchased the assets and property of the Kentucky corporation at an agreed price of $240,000 and the assumption of all its liabilities. The Delaware corporation had an authorized capital stock of 100,000 shares of stock of non-par value. The answer further avers that the Delaware corporation was, in addition of the $240,000, to issue to John M. Crowe 48,-000 shares of its stock and assume the current obligations of the Kentucky corporation in the sum of $34,000.

The $240,000 was to be paid from time to time from the sale of stock in the Delaware corporation. A value of $7.50 per share had been placed upon this stock. An option had been given to McClure & Co., New York brokers, to sell this stock. This sale had been promoted and arranged by A. R. Miller and persons associated with him, who had likewise arranged the sale of the stock in the Delaware corporation. The agreement required the payment of the $34,000 first, and secondly the $240,-000 to the Kentucky corporation. There was then to be paid by the Kentucky corporation to its stockholders $128,000, and to A. R. Miller and his associates $87,000 as payment for their work in this deal, and to John M. Crowe $25,000. The sale of stock did not move as satisfactorily as was anticipated, and the New York broker was unable to raise enough money from the sale of the stock of the Delaware corporation to make the payment as above set out. It is further averred that, to enable the Delaware corporation to liquidate its whole indebtedness to the Kentucky corporation, Miller and his associates were requested to accept 11,600 shares of stock in the Delaware corporation in lieu of the $87,000 they were entitled to under the agreement. It is further averred that in December, 1928, Crowe entered into an agreement with Miller that, in event he could bring about the sale of enough of the Delaware corporation stock to pay the $34,000 and the indebtedness to the stockholders and the $25,000 to Crowe and accept 11,600 shares of stock in lieu of the $87,000 cash, Crowe would pay Miller one-fourth of the $25,000 due him, or $6,250, as part of the commission which would have been due Miller individually had he been paid in cash. It further alleged that Miller's individual interest in the $87,000 was $12,500; that his individual interest in the 11,600 shares of stock was 1,667 shares; that the 1,667 shares of stock represented an amount equal to $12,500. It is alleged further that, after this contract was agreed to, on February 2, 1929, Crowe delivered to Miller a check for $6,250, and Miller delivered to Crowe a writing in words as follows:

"Cincinnati, Ohio, February 2, 1929.

"J. M. Crowe, Cinci. Ohio

"Dear John: -This will confirm our understanding of even date, i. e., in the event McClure and Co. sells the 1,667—sixteen hundred sixty-seven shares of Crowe Mfg. Corpn. stock that I am to

receive from the Ky. Corpn. as my part of the commission due for handling your deal. I am to pay you 50% of the amount I receive as I receive payments all or in part. In the event I receive no payments the $6,250.00 handed me today is to represent payment of commission due.

"This will be your authority to examine my records or the records of McClure & Co. in connection with his deal.

Yours truly,

"A. R. Miller."

The answer alleged that this writing was a memorandum or confirmation of the contract heretofore entered into between these parties, and that the $6,250 sued for herein was paid under that contract. The answer states that, by the terms of this contract, if Miller sold the 1,667 shares of stock he was to receive from the Kentucky corporation in the Delaware corporation, he would pay Crowe 50 per cent, of the sum as, when, and if he received it, and, in event no payments were received from the sale of the stock, then the $6,250 was to represent payment of commission due him. Thereafter he states that he owed 50 per cent of the 1,667 shares, and that Crowe owned a like interest in them. He further avers that the stock was never sold for the sum of $7.50 per share, and that it was held by him until the Delaware corporation was dissolved on February 1, 1930, and that he received $2.01 per share, or a total of $3,350.67, in the dissolution, and that he is indebted to the plaintiff, John M. Crowe, in the sum of $1,675.34, representing one-half of the proceeds of the sale, and that he performed his part of the contract.

By agreement of the parties the second paragraph of this amended answer was controverted of record. The defendant then, in open court, offered and agreed to confess judgment for $1,675.34, and the plaintiff waived notice and declined said offer. By agreement of the parties this cause was set for trial December 8, 1930. On that day the plaintiff tendered and filed in open court a written reply in which he traversed the material allegations of the plaintiff's amended answer. A trial before a jury, upon the issues as made by amended pleadings, was had, and on the 9th day of December, 1930, the following verdict was returned: "We, the jury, find for the plaintiff the sum of $1,675.34. R. M. Simonton, Foreman." The judgment was entered upon that ver-

dict. The plaintiff appeals, insisting (1) that the defense set out in the amended answer was not a good defense to plaintiff's claim, and that the court erred in permitting the amended answer to be filed; (2) that the verdict was against the evidence; and (3) that there was a variance between the defendant's proof and pleading for which reason a peremptory instruction should have been given.

The only evidence introduced in this trial was the evidence given by the appellant and the appellee. The court ruled that the burden was upon the appellee; his proof was introduced first.

The facts, as shown by the evidence of the appellees, are that the Crowe Manufacturing Corporation of Kentucky, prior to October 11, 1928, was engaged in the manufacture of patent electric saws, upon which the appellant, John M. Crowe, had some character of patent. He was president of the corporation and the largest stockholder. The company was indebted about $34,000 to banks, and to preserve its assets it was necessary to adopt some method of refinancing. On October 11, 1928, it entered into a contract for the sale of its assets to the Crowe Manufacturing Corporation of Delaware. These two corporations are referred to as the Kentucky corporation and the Delaware corporation. The Delaware corporation had a capital stock of 100,000 shares of no par value. By the agreement of sales, John M. Crowe released all his interest in the Kentucky corporation to the other stockholders. In consideration for this he was to receive a bonus of $25,000 from the Kentucky corporation and 45,000 shares of stock in the Delaware corporation. The contract price for the Kentucky corporation was $240,000, the 48,000 shares of stock to Crowe; the assumption of all the current obligations of the Kentucky corporation including the $34,000 to the bank. The only assets owned by the Delaware corporation were those obtained from the Kentucky corporation. The $240,000 was to be paid from time to time from the sale of stock in the Delaware corporation.

An option for the sale of this stock had been given to McClure & Co., brokers of New York, and a price of $7.50 per share was fixed upon the stock. This would have produced enough to pay off the liabilities assumed by the Delaware corporation, including the $240,000 to the Kentucky corporation. The appellee, A. R. Miller, and those associated with him, promoted the sale of the

Kentucky corporation to the Delaware corporation as well as the sale of the stock of the Delaware corporation under the option.

The Delaware corporation, under the agreement, was first to pay $34,000 to the bank, then the $240,000 to the Kentucky corporation. The Kentucky corporation was then to distribute $128,000 among its stockholders, to pay the $25,000 bonus to John M. Crowe, and $87,000 to A. R. Miller and associates for the work in promoting the sale. The New York brokers were unable to sell enough of the stock to meet the obligations as quickly as desired by the parties hereto. To raise enough funds from the sale of the stock of the Delaware corporation to pay the Kentucky corporation in full, Miller and his associates were asked to and did agree to accept 11,600 shares of the Delaware corporation stock in lieu of the $87,000 which they were entitled to under contract.

In December, 1928, Miller and Crowe entered into an agreement to further stimulate the sale of the Delaware corporation stock. Crowe agreed to pay Miller one-fourth of his $25,000, or $6,250 in event Miller would procure the sale of enough stock of the Delaware corporation to pay the $34,000 to the bank and $128,000 to the Kentucky corporation stockholders and $25,000 to him and accept 11,600 shares of the Delaware corporation in lieu of the $87,000. Miller's individual share was the commission of $12,500. His individual share of the 11,600 shares would have been 1,667. That number of shares at $7.50 per share equals $12,502.50. There is a slight discrepancy in all the figures used in both the pleading and in the evidence.

On February 2, 1928, Crowe delivered to Miller a check for $6,250. At the same time Miller delivered to Crowe the letter set out in his answer confirming the agreement.

A great amount of the evidence is not material. In so far as the court would allow him, Miller entered into the details of the sale of the Kentucky corporation to the Delaware corporation, reiterated each and every fact and detail of the arrangement. He says he entered into an agreement with John M. Crowe that, if he should be able to procure the sale of enough stock to pay the bank's indebtedness, the amount above set out to the stockholders and the $25,000 to Crowe, he (Crowe) would give him one-fourth of his $25,000 as commission. He says that, in pursuance of that agreement, Crowe did

give him the sum of $6,250; that, at the time he undertook this contract with Crowe, the 1,667 shares of stock had not been delivered to him. He further agreed that, in event he could not sell the stock as set out in the agreement, then and in that event Crowe was to have a one-half interest in the 1,667 shares of stock. He states that he executed the writing set out in his answer, delivered it to Crowe, as a confirmation of their agreement, and that this is the whole agreement between him and the appellant, Crowe. He further states that the stock was not sold, but he received $3,350.67 in the dissolution, that he owes Crowe one-half of that amount, but that he did everything required of him under the contract, and procured sale of enough stock to liquidate the indebtedness. This was all the evidence introduced by the appellee.

Mr. Crowe testified that on the 2d day of February, 1928, he delivered the $6,250 check to Crowe. He says he met him in his office; that Miller said to him, " 'I want to borrow some money from you, we are putting across this Loft Candy deal in New York and my associates down there expect me to bring back some money so we can put the deal across.' I said, 'That belongs to Mrs. Crowe and myself, that is our interest.' He said, 'You let me have it and I will pay you back just as soon as I sell this stock I have in the Crowe Manufacturing Corporation. We are selling it now and are going to put it across.' " He further testified that he made out the check and handed it to Miller. He says he requested Miller to give him a note for it; that he gave Miller one of his letter-heads, and Miller wrote out the paper referred to in this answer and used in this trial. He protested that this was not a note, and that he did not want it, and that Miller said, "That will take care of you;" that he had a second conversation in which he further demanded that he execute him a note, and Miller refused. He denied that he ever agreed to pay Miller any part of his $25,000 or that Miller ever performed any service individually for him. He did admit he received the last payment of his $25,000 a few days before this check was given Miller; that the only connection he had with Miller was the connection that Miller had with the Kentucky corporation, and that was only for the payment of commissions to Miller and his associates for work done for the Kentucky corporation. No other witness was introduced by the appellant.

The court instructed the jury as follows:

"The jury will find for the plaintiff, Crowe, against the defendant Miller the sum of $6,250.00 with interest thereon from February 2, 1929, until paid, unless you believe from the evidence that prior to said date said plaintiff had entered into an agreement with said defendant that if defendant, Miller, would procure the sale of enough of the capital stock of the Crowe Manufacturing Corporation of Kentucky to pay said plaintiff, Crowe, the sum of $25,-000.00, to satisfy a claim of $25,000.00 which plaintiff had against the Crowe Manufacturing Company of Kentucky, and that said Crowe would pay said Miller 25% of said $25,000 in consideration for said services and they further believe that said Miller did procure the sale of said stock in an amount sufficient to pay said amount and same was paid to to Crowe by the Crowe Manufacturing Corporation of Kentucky in full of his said claim and that Crowe paid Miller said $6,250.00 in consideration of said services, then you should find for the plaintiff the sum of $1,675.34, the amount defendant admits he owes plaintiff by the terms of said named agreement if there was such an agreement."

The objection made by the appellant is that the allegations of the amended answer are contradicted by the exhibit, hence the court erred in permitting the amended answer to be filed. It is argued that in the answer the $6,250 was paid Miller for services rendered, and that the writing specifically provides for a repayment. A careful reading of the letter, contract, or memorandum fails to substantiate that conclusion. It provides for a repayment only in the event of sale of sufficient stock for that purpose. The stock, according to proof, did not sell, but $3,350.67 was realized in the dissolution of the Delaware corporation. The writing bears that construction. The issue here is whether the $6,250 was a loan as set out in the plaintiff's petition or payment under the contract as set out in the answer. Under the contention of these two litigants, it was proper to allow the appellee to file the amended answer. If the money was not loaned to him, he had a right to inform the jury upon what condition he received the money from appellant. That he did by his answer, and no more. The court took the proper steps in the first trial when this

defense was brought into question to stop the trial and compel the parties to amend their pleadings consistent with the facts relied upon as developed by the proof. Section 134, Civil Code of Practice; Ingram v. Tucker, 151 Ky. 827, 152 S. W. 957; National Mutual Benefit Association v. Jones, 84 Ky. 110, 7 Ky. Law Rep. 751, 759. There being no discord between the exhibits and the allegations of the answer, we perceive no error in allowing the amended answer to be filed.

The second ground, that the verdict is unsupported by the evidence, is without merit. The evidence of the appellant and that of the appellee is as wide apart as the North and South Poles and as inconsistent as life and death. There is, however, sufficient evidence to support the verdict of the jury which elected to believe Miller and his evidence rather than that of the appellant; this they had a perfect right to do. The attorney for the appellant says that practically everything, in addition to the issues, got into this record. It is true that a lot of redundant matter got into the record which has but little, if any, probative value. There is a lot of repetition in the proof, without objections. It was necessary, however, to a complete understanding of the involved facts and circumstances in the transactions of these parties to allow the evidence to take a wide field. There is much of the evidence which is not exactly material, though not incompetent, nor did its introduction prejudice the rights of appellant.

The third ground, that there is such a variance between the proof and the pleadings that the proof wholly fails, and that the court erred in overruling the motion for a peremptory instruction—this contention encompasses the first two grounds based upon the allegations that the $6,250 was to be paid as commission and that the contract provided otherwise, and that therefore appellant is bound by the allegations of his petition, that, where an exhibit contradicts the allegations of the petition, the petition prevails; hence the proof did sustain allegation of answer.

We have taken the position above that no such state of facts exists in these pleadings. Satisfying ourselves with the correctness of that conclusion, we refrain from discussing the technical question presented in this, as it is not borne out by the facts and evidence. The plain unmistakable evidence of Miller is that the writing is the contract between him and the appellant; that he received

the check for $6,250 in consideration of acts performed under the contract. The writing was made as confirmation of the agreement. Crowe was to own one-half interest in proceeds of sale of 1,667 shares of stock, if sold; otherwise the $6,250 to be credited as commission due. The stock sold for $3,350.67 instead of $12,500. Hence Crowe was, if the contract prevails, entitled to $1,674.34. The truthfulness or falsity of the pleading or the exhibits or the evidence is beyond our knowledge. The jury believed one side rather than the other, and awarded judgment in favor of Crowe for $1,674.34, under the contract; as to this verdict, we find no error.

It is argued that the appellee's evidence on cross-examination is in direct conflict with his direct testimony. A close examination of the evidence discloses some apparent difference. But, be that true or otherwise, at the most it could only go to his credibility as a witness, and the jury had the full benefit of both his evidence on direct and cross-examination.

Perceiving no error in the verdict of the jury and the judgment thereon, the judgment is therefore affirmed.