## LUEDERS' EX'R *v.* HARTFORD LIFE & ANNUITY INS. CO.*

*(Circuit Court, E. D. Missouri. May 5, 1882.)*

1. INSURANCE—APPLICANT MUST ACT IN GOOD FAITH.

    A party applying for insurance is bound to answer questions concerning facts material to the risk, truthfully.

2. SAME—APPLICATION—RULE WHEN AGENT INSERTS FALSE STATEMENTS.

    Where an authorized agent of an insurance company has examined an applicant for insurance upon questions contained in a blank application, and undertakes to fill in the applicant's answer, the applicant has a right to presume that his answers have been written down as given; and if he has answered all questions truly, and signs the application under the impression that his answers have been correctly reduced to writing, a policy issued on the faith of the application will not be invalidated by false answers inserted in the application by the company's agent without the applicant's knowledge, even where the application is made a part of the policy and contains a declaration that the answers contained therein "are full, complete, and true; and it is agreed that this declaration and warranty shall form the basis of the contract between the undersigned" and the company.

3. SAME—EVIDENCE.

    In such cases oral evidence is admissible to prove that the questions contained in the application were answered truly by the applicant.

4. SAME—JUDGMENTS.

    Where a mutual life insurance company issued five certificates of membership in its safety-fund department to an applicant for insurance, in each of which it agreed in case of the assured's death to make an asessment "upon the holders of certificates in force in said department at the date of such death according to the table of graduated assessment rates given herein, as determined by their respective ages and the number of such certificates in force at

*Reported by B. F. Rex, Esq., of the St. Louis bar.

the date of such death, and the sum collected thereon (less 10 cents per member for costs of collection) shall be paid: provided, however, that in no case shall the payment upon this certificate, in the event of such death, exceed $1,000, less $15 as a *post mortem* contribution to said safety fund:" *held*, that upon the assured's death his legal representative was entitled to judgment against said company for the maximum amount named in said certificate.

This was a suit by the executor of J. H. Lueders upon five certificates of insurance, in the sum of $1,000 each, issued by the Hartford Life & Annuity Insurance Company upon the life of said Lueders. The petition declared the certificates as simple contracts of insurance, and asked judgment upon each certificate for the maximum amount named therein. The defendant answered that said certificates were null and void because of certain concealments on the assured's part, and because the answers contained in his application in reference to his health were false. And the answer set up a provision of the certificates sued on by which it was provided that if there should be any concealment, misrepresentations, or false statements made in the application on which said certificates issued, said certificates should be null and void. Plaintiff in reply denied the allegations of the answer, and alleged that the assured had concealed nothing and made no false representation, but had, in reply to questions contained in the application, stated the truth to the defendant's agent who took his application; that the answers contained in said application had been written therein by defendant's agent; and that if false answers had been inserted it was without the applicant's knowledge. The application upon which the certificates sued on were issued contained, among others, the following questions and answers:

"(12) Do you now possess a sound constitution and good health? Yes."
"(19) How long is it since you were attended by a physician, or have professionally consulted one? About six weeks ago. For what disease? Liver complaint. Have you fully recovered therefrom? Yes."

The following declaration was appended to the application:

" It is hereby declared and warranted that the foregoing answers and statements are full, complete, and true; and it is agreed that this declaration and warranty shall form the basis of the contract between the undersigned and the Hartford Life & Annuity Insurance Company, and are offered to said company as a consideration of the contract applied for, and are hereby made a part of the certificate to be issued on the application," etc.

The application was signed by the applicant.
The certificates sued on each contained the following clauses:

"In consideration of the representations, agreements, and warranties made in the application herefor, and of the admission fee paid, and of the sum of $10 to be paid to said company, to create a safety fund as hereinafter described, and of 25 cents to be paid monthly for expenses, and of the further payment, in accordance with the conditions hereof, of all mortuary assessments, does hereby issue this certificate of membership in its safety-fund department to J. H. Lueders, of St. Louis, county of St. Louis, state of Missouri, with the following agreements:

"That said company will deposit said sum of $10, when received, with the trustee named in a contract made with it, (of which a copy is printed herein,) as a safety fund, in trust for the uses and purposes expressed in said contract, and shall at the expiration of five years from July 1, 1879, if said safety fund shall then amount to $300,000, or whenever thereafter said sum shall be attained, make a semi-annual division of the net interest received therefrom by it, *pro rata,* among all the holders of certificates in force in said department at such times, who shall have contributed five years prior to the date of any such division, their stipulated proportion of said fund, by applying the same to the payment of their future dues and assessments. * * *

"Said company further agrees that if at any time after said fund shall have amounted to $300,000, or after five years from January 1, 1880, if that amount shall not have been attained before that date, it shall fail by reason of insufficient membership or shall neglect, if justly and legally due, to pay the maximum indemnity provided for by the terms of any certificate issued in said department, and such certificate shall be presented for payment to said trustees by the legal holder thereof, accompanied by satisfactory evidence as hereinafter provided of its failure to pay, after demand upon it within the time herein stipulated for limitation of action, then it shall be the duty of said trustee to at once convert said safety fund into money, and divide the same (less the reasonable charges and expenses for the management and control of said fund) among all the holders of certificates then in force in said department, or their legal representatives, in the proportion which the amount of each of their certificates shall bear to the amount of the whole number of such certificates in force; and that in such event it shall file with said trustee a correct list under oath of the names, residences, and amounts of the certificates of all members entitled to participate in such division. * * *

"The evidence referred to above to be either certification of said insurance company's president or secretary that a claim is justly and legally due, and that payment thereof has been demanded and refused, or the duly-attested copy of a final judgment obtained thereon in any court of competent jurisdiction, satisfaction of which has been neglected or refused for the period of 60 days from date. * * *

"Upon the death of the member aforesaid while this certificate is in force, all the conditions hereof having been conformed to by said member, and on the receipt by the president or secretary of said company of satisfactory proofs of such death, an assessment shall be made upon the holder of all certificates in force in said department at the date of such death, according to the table of graduated assessment rates given herein, as determined by their respective ages, and the number of such certificates in force at the date of

such death, and the sum collected thereon, (less 10 cents per member for costs of collection,) shall be paid: provided, however, that in no case shall the payment upon this certificate in the event of such death exceed $1,000, (less $15 as a *post mortem* contribution to said safety fund.)  *  *  *

"The application on the faith of which this certificate issued is hereby referred to and made a part of this contract."

The case came up for trial April 11, 1882, and was tried before a jury.

The plaintiff introduced the certificates sued on in evidence. Defendant introduced the application, and evidence tending to prove that the assured had liver complaint at the time he made the application and knew it. Plaintiff offered oral evidence in rebuttal tending to prove that the assured had told the examining physician of the defendant, 'when his application was taken, that he had liver complaint; that said physician had examined assured and had himself inserted the answers contained in the application; and that the assured had signed the application supposing it contained the answers given by him. Defendant objected that the only admissible evidence as to what answers had been given to the questions contained in the application was the application itself; but the objection was overruled.

*George M. Stewart* and *Paul Bakewell*, for plaintiff.

*Frank K. Ryan*, for defendant.

TREAT, D. J., (*charging jury orally.*) This case differs in some respects from the cases ordinarily submitted to juries concerning life-insurance policies. If you should find for the plaintiff, as there are five of these so-called certificates or policies, you will necessarily find for her in the sum of $5,000, with interest at the rate of 6 per cent. per annum from December 15, 1881; that is, 90 days after the proof of death.

Now, shall the plaintiff recover? The primary contest is that the deceased made a false statement concerning a disease which he then had and which contributed to his death, to-wit, the so-called liver complaint. The answer to the question, as recorded in the application, is: "Had liver complaint six weeks ago; am well now." If he had not recovered from the liver complaint, and if he actually made that answer, and died of that disease within the short period named, the plaintiff here has no right to recover; in other words, your verdict should be for the defendant. But did he make such an answer? And there the strain of the case comes. You have heard the testimony of the widow, and of the doctor who examined Mr. Lueders. When questioned by the medical examiner of this com-

pany concerning this supposed liver complaint, if he did make the answers as stated by Mr. Wagner and by the doctor, and they were written down in pencil on this paper, and the paper was put across the table for him to sign, and he signed it under the hurry and circumstances developed before you, he had a right to suppose that his answers were recorded as he gave them. If that statement is correct, then this paper is a subterfuge, because he did not tell them what is written down there, but told them that he not only had liver complaint and enlargement of the liver, but that he believed he still had it, and told them who his doctor was that treated him for it; and if this medical examiner of the company wrote down merely his own conclusions with regard to it, and not the answers of the applicant, then the plaintiff is not bound by this application. In other words, every one is bound in these matters, whether the company be a mutual or any other sort of company, to deal truthfully and honestly with the company, because on the faith of the statement of the applicant the company must determine whether it will assume the risk; therefore if the applicant, with regard to any of the questions which are material to the risk, answers falsely, there can be no recovery on the policy. That principle, as a matter of common honesty, ought to obtain with regard to all transactions between man and man.

I presume it will hardly be questioned by you, in the light of the testimony, that the deceased died of the disease called *cirrhosis* of the liver, or, in ordinary language, liver complaint. When he underwent examination and was called upon to answer questions, what did he answer? Did he answer that he had liver complaint merely and was now well? Or did he answer that he had enlargement of the liver? Do you believe that he gave this answer and saw the medical examiner write it down, or is it the conclusion of the medical examiner not only from the statements made by the party applying for the insurance, but also from the result of his own medical investigation? If the answers are not written down as the applicant gave them he is not responsible for what anybody else wrote. He had a right to suppose, in common honesty, that when he signed the paper which was written in pencil his answers were correctly recorded, more especially when an officer of the company was recording them. If the officer of the company wrote down, not the answers made by the applicant, but his conclusions gathered from the statements of the applicant and his reference to his medical attendant, Dr. Holland, and also from

his own examination, and these are answers that the applicant never made, he is not bound by them.

So that, to sum it up in a few words, if the deceased made a false statement in regard to a matter which is material to the risk, to-wit, concerning this li e complaint, from which he died, there can be no recovery by the plaintiff; but if, on the other hand, despite his signature to this paper, which seems originally to have been written in pencil, even supposing it was correctly transcribed into ink afterwards, these are not the answers the applicant made to the questions, but what the doctor chose to write down as his conclusions from the answers made to the questions and his examination, then the plaintiff is entitled to recover. In other words, the applicant is only bound by the answers he makes, and is not bound by the conclusions of the examining doctor from the statements of the applicant, or by the opinion of the doctor with regard to them. You understand me, gentlemen, in regard to it. You have heard the testimony of two witnesses as to what occurred at the time the application was signed, the questions that were put, the circumstances under which they were put, how they were noted down, and who noted them down. They were not written in the handwriting of the deceased. They were written by the medical examiner of the company under the circumstances which he has disclosed. Now, these answers, in the light of the testimony of the widow of the deceased, would appear to be (and that is for you to decide) rather the result of an opinion formed by the medical examiner as to what ought to be the answers, and not what the answers really were. In other words, if, as the doctor testifies, the answer was, "I have had an enlargement of the liver," and went through the process of disrobing in order that the doctor might determine the matter, and the doctor, reaching his conclusions, chose to write down this answer without the knowledge of the deceased, it is not the answer of the deceased, and he is not responsible therefor.

---

The defendant excepted to the giving of the following portion of said charge, to-wit:

"Now, shall the plaintiff recover? The primary contest is that the deceased made a false statement concerning a disease which he then had, and which contributed to his death, to-wit, his so-called liver complaint. The answer to this question, as recorded in the application, is: 'Had liver complaint six weeks ago; am well now.' If he had not recovered from the liver complaint,

and if he actually made that answer and died of that disease within the short period named, the plaintiff here has no right to recover.  *  *  *

"So that, to sum it all up in a few words, if the deceased made a false statement in regard to a matter which is material to the risk, to-wit, concerning the liver complaint from which he died, there can be no recovery by the plaintiff.  *  *  *

"Therefore, if the applicant, with regard to any of the questions which are material to the risk, answered falsely, there can be no recovery on the policy."

Under the instructions of the court the jury found for the plaintiff.

The judgment, after reciting the verdict, etc., proceeds:

"It is therefore considered by the court that the plaintiff, Caroline Lueders, executrix under the will of J. H. Lueders, deceased, have and recover of the defendant, the Hartford Life & Annuity Insurance Company, of Hartford, Connecticut, as well the said sum of $5,096.66, (five thousand and ninety-six dollars and sixty-six cents,) the damages as aforesaid by the jury assessed, as also the costs herein expended, and that execution issue therefor."

The defendant moved the court to set aside the verdict and judgment entered in the cause for the following reasons:

"(1) The verdict of the jury is against the evidence presented at the trial. (2) The verdict was against the weight of the evidence. (3) The verdict is against the law as declared in the charge by the court to the jury. (4) Because the court erred in refusing to charge the jury as asked for in the instructions offered by the defendant. (5) That the court erred by its charge to the jury in submitting to said jury the materiality of the alleged warranties and misrepresentations of J. H. Lueders contained in his application for insurance."

---

The following opinion was delivered upon the motion:

TREAT, D. J.    Under the insurance statutes of Missouri the defendant established an agency in this state, subject, of course, to the provisions of said statutes.    It is contended that the contract sued on does not permit recovery of any sum, when loss occurs, except to the extent of assessments to be made upon the number of issued certificates; consequently the plaintiff must aver and prove the number of such outstanding certificates, the judgment to be limited thereby, notwithstanding the amount insured.    The case referred to in Connecticut reports (*Curtis v. Mutual Benefit Life Ins. Co.* 1880) goes very far in that direction; indeed, is directly in point.

It is not proposed to analyze the various cases in England and the United States which seemingly bear on like policies.    The contract

sued on is somewhat anomalous. It is presumed that it contemplated some available measure of indemnity. When a loss occurs under it, and satisfactory proofs thereof are made to the president and secretary, their duty to make the required assessment ensues, according to its express terms. If they fail to perform such duty shall the other party be remediless? As to what legal proceedings might then prevail it is not necessary now to discuss. This suit is to establish plaintiff's rights in a case where the company denies that he has any rights whatever. The contract contemplates on its face that final judgment may have to be made; and whether it did or not, the parties aggrieved would have their legal remedy in the proper courts.

It is necessary for the plaintiff to prove a valid loss, the amount to be recovered therefrom after judgment being dependent, possibly, on subsequent events, viz., how much may be collected on the required assessments. Shall the suit at law be based, as to damages, on the number of outstanding certificates, irrespective of what may be collected from assessments thereon within 90 days? Enough appears to show that more than 22,000 certificates of the class named have been issued—scattered, it may be, over many states. It is best known to the company who and where are the certificate-holders, and, if plaintiff's rights to a judgment on a disputed loss are to be limited by the number, etc., of outstanding certificates, it would seem that defendant should set up the limit as to the number, etc., lapsed or otherwise.

There are many strange provisions in the contract. It is made by a corporation which, it is contended, has subdivided itself into departments for the conduct of distinct branches of business, on some of which it is directly and positively liable, and on others only contingently liable, and on others liable, as in this case, only in such a way as to become a mere agent to collect from its policy-holders what assessments they may be liable to for losses occurring. Possibly such may be the true construction of its differing contracts and of its corporate obligations; but this court is not prepared so to hold. There must be some one answerable at law for the contracts it makes, and judgments on such contracts must be against the corporation; but why, if merely an agent? In the absence of any proof to the contrary, the sum recoverable should be against the corporation for the maximum insured. Any other rule would make this insurance scheme a mere delusion and snare.

It may often happen that the corporation disputes all liability, and hence refuses to make any assessment, as in this case. When such a dispute is submitted to a court of law, and the judgment is against the corporation, who shall respond to that judgment? If the loss had been admitted originally, and assessment made on the certificate-holders, and the amount collected paid over within 90 days, as the contract contemplates, no great difficulty might have occurred. Surely the commencement of this suit did not so fix the obligation of other certificate-holders as if, by a lien, that they, and they alone, would be answerable, and only for the result of this judgment. The scheme, if it be as contended, is vague and indeterminate—*First,* as to the amount of loss recoverable; and, *second,* in the event of litigation, against whom and to what extent judgment shall be enforced. If judgment is to be against the corporation, for what amount shall it be rendered, and how shall the amount be ascertained? If the assessment is to be made only on certificate-holders existing at the time of loss happening, how is it as to those who fail to pay? Who shall collect from the delinquents, and when? What becomes of a judgment for a certain amount? If the judgment has to be for an amount equal to the number of certificate-holders, how about payment within 90 days, when assessments are to be collected equally and solely from certificate-holders scattered all over the country?

If the defendant's theory as to the true construction of the contract, when the corporation compels a suit, is to obtain, then a policy like the present is of little worth. True, if a person, *sui juris,* chooses to make a foolish contract, he must abide by its terms; but should not the contract be so construed as to make its contemplated benefits available?

Despite some decisions to the contrary, this court cannot hold otherwise than that when suit has to be brought the recovery should be for the maximum insured, unless the defendant shows by pleadings and proof that said sum should be reduced. Even then the strange result would follow that as to each outstanding certificate-holder and his responsibility a controversy might arise. The further the inquiry is pursued, the greater the legal difficulties presented.

The motion for new trial must be overruled.