# BENNIE ELIZABETH O'CONNOR v. MODERN WOODMEN OF AMERICA.[1]

January 28, 1910.

Nos. 16,349—(181).

**Application for Insurance — Incomplete Answer.**

An incomplete answer to a question contained in an application for life insurance, truthful so far as responsive, *held*, in the absence of fraud or intentional concealment, not to vitiate the policy of insurance issued thereon.

**Intemperate Use of Intoxicating Liquors.**

The expression "intemperate use of intoxicating liquors," in a contract of insurance, means, properly construed, such an indulgence in intoxicants as tends to impair the health of the insured, or render the insurance risk more hazardous.

**Same — Evidence.**

Evidence *held* not to show, as a matter of law, an intemperate use of intoxicating liquors, within the meaning of the contract.

**Question for Jury.**

Whether the death of the insured in this case was the result of an accident, or his deliberate act, *held*, on the evidence presented, a question of fact, and that the verdict of the jury is sustained.

Action in the district court for St. Louis county to recover $2,000 on defendant's benefit certificate upon the life of plaintiff's husband. The defenses alleged in the answer are stated in the third paragraph of the opinion. The case was tried before D'bell, J., and a jury which rendered a verdict in favor of the plaintiff. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Benj. D. Smith* and *John H. Norton,* for appellant.

*John Jenswold, Jr.,* for respondent.

[1]Reported in 124 N. W. 454.

BROWN, J.

Action to recover upon a benefit certificate issued by defendant to plaintiff's deceased husband, payable to her in the event of his death. Plaintiff had a verdict, and defendant appealed from an order denying its alternative motion for judgment notwithstanding the verdict or for a new trial.

The insurance contract is similar to those generally entered into by mutual benefit societies, and issued upon and pursuant to an application for membership in the order. Plaintiff's husband was admitted as a member in defendant society in August, 1907, and died, either from accident or by his own hand, the following November. Proofs of death were duly made to defendant, payment was refused, and this action followed.

Defendant refused payment of the amount of the certificate upon three grounds: (1) That false and untrue answers were made by the insured to certain questions in his application; (2) that subsequent to the issuance of the certificate insured became intemperate in the use of intoxicating liquors to such an extent as to forfeit all rights under the same; and (3) that he committed suicide. These several grounds were presented as a defense to the action, and were submitted to the jury by the trial court, and determined adversely to defendant's contention. It is contended in this court that each defense so made is conclusively sustained by the evidence, and that a verdict should have been directed in defendant's favor. The assignments of error presenting these questions will be disposed of in the order above stated.

1. The application for membership, which the insured was required to sign as a prerequisite to his admission into the society, contained numerous questions designed to furnish the members of the order with information relative to the applicant, his family history, the condition of his health, occupation and habits of life, as a guide in determining whether to admit him. The questions contained therein were propounded to the insured by the camp physician of the society, and the answers given recorded by him in blank spaces opposite each question. It is contended that the answers given to question No. 18 were not true.

That question is divided into several parts, and with the answers thereto, as given by the insured and recorded by the camp physician, is as follows: "18. (a) Do you abstain entirely from the use of intoxicating liquors.: Answer, No. (b) How long have you been a total abstainer? Answer, ———. (c) Were you ever intoxicated? Answer, No. (d) If so, when last? Answer, ———. (e) Do you use intoxicating liquors daily? Answer, No. (f) If you use intoxicants at all, state kind and quantity consumed. Answer, When I come to town, beer."

The application was expressly made a part of the contract between the insured and the society, and provides that if the answers therein contained, and the information thereby conveyed to the society, shall not be literally true in every respect, the benefit certificate shall be wholly void. It appears from the evidence that at the time the application was signed and presented to the society the applicant was in the habit of drinking whiskey, as well as beer, and because no reference is made to it in the answer to the last question above set out, viz., "If you use intoxicants at all, state kind and quantity consumed," it is claimed that an untruthful answer was given, in consequence of which the insurance contract is a nullity. The answer to the question was, "When I come to town, beer."

It cannot be seriously claimed that these questions were not material. They were designed to elicit information concerning the applicant's habits in reference to intoxicating liquors, and to enable the society to determine the propriety of receiving him into the order. Mattson v. Modern Samaritans, 91 Minn. 434, 98 N. W. 330. Undoubtedly, had they disclosed a habit in this respect likely to grow upon the applicant and render him an undesirable risk, or otherwise unworthy of membership, the society would have been led to reject him. But, with their materiality in mind, we are unable to concur in the contention that the partial answer to the question calling for the kind and quantity of liquor consumed vitiates the contract. The answer, so far as responsive, was true, and there is no claim that it was false. The substantial fact, viz., that the applicant was in the habit of indulging in intoxicating liquors, was communicated by the answer, and there is no suggestion in the record

that applicant's failure to include whiskey in designating the kinds of liquor drunk was either fraudulent or an intentional concealment. It was, at most, but a partial answer, and gave to the society the principal information, viz., that the applicant to some extent was in the habit of drinking intoxicants. The answer to the question was recorded by the society's physician and agent (Supreme Lodge v. Withers, 177 U. S. 260, 20 Sup. Ct. 611, 44 L. Ed. 762); and, if more particular information was desired, he could readily have obtained it by further questions. The form in which the answer appears in the application, "When I come to town, beer," renders it apparent that the applicant was not impressed with the importance or necessity of extending the answer to include all the numerous varieties of intoxicants. In fact, the blank space left opposite the question in which to record the answer was insufficient to include one-tenth of the varieties usually found in drinking resorts.

The case comes within the rule laid down in Rupert v. Supreme Court U. O. F., 94 Minn. 293, 102 N. W. 715, where an incomplete answer was given in a similar application. There the question was, in substance, "State the names of the physicians or surgeons who have recently attended you, if any." The applicant gave the name of one, whereas other physicians had attended him within a recent time. See also Modern Woodmen v. Wilson, 76 Neb. 344, 107 N. W. 568; Metropolitan v. Ford, 31 Ky. Law Rep. 513, 102 S. W. 876; Mutual v. Cotter, 81 Ark. 205, 99 S. W. 67.

2. The by-laws of the society, which form a part of the contract of insurance, provide that if any member becomes intemperate in the use of intoxicating liquors, or in the use of drugs or narcotics, or if his death shall result, directly or indirectly, from his intemperate use of intoxicants, drugs or narcotics, then and in that case the benefit certificate shall be null and void. The question whether this by-law had been violated by the insured was submitted to the jury, and a special verdict answered the question in the negative. Defendant contends that the verdict is not supported, and that the evidence is conclusive of its violation. We do not sustain this view of the evidence.

The by-law is somewhat ambiguous. The expression "intemperate

use of intoxicating liquors" might be differently interpreted, depending upon the viewpoint of the interpreter. From the standpoint of sentiment, or the social affairs of defendant's society, a daily indulgence by a member might be regarded as an intemperate use, regardless of the quantity of liquor consumed. But such a construction is not permissible in the determination of legal rights. The purpose of the by-laws was to define the legal, and not the social, rights of members, and, to bring it into operation by an overindulgence in intoxicating liquors, it should appear that the conduct of a member in this respect was of such a nature, and the habit so intemperately followed, as to impair his health, mental faculties, or otherwise render the insurance risk on his life more hazardous. 3 Joyce, Insurance, 2096; Northwestern Life Ins. Co. v. Muskegon Bank, 122 U. S. 501, 7 Sup. Ct. 1221, 30 L. Ed. 1100; Knickerbocker Ins. Co. v. Foley, 105 U. S. 350, 26 L. Ed. 1055.

Any other view would give sentimental considerations superiority over legal rights, which, of course, cannot be done. So construing the by-laws, we have no difficulty in reaching the conclusion that the insured in the case at bar had not become so addicted to the use of intoxicants as to impair his health, or mental faculties, or otherwise render his insurance risk more hazardous. While there is some evidence tending to show excessive drinking, it is not of such a nature, considered in connection with evidence to the contrary, to require, as a matter of law, the conclusion that the spirit and purpose of the by-law had been violated. Fludd v. Equitable, 75 S. C. 315, 55 S. E. 762; Mutual v. Thomson, 94 Ky. 259, 22 S. W. 87; Provident v. Dees, 27 Ky. Law Rep. 670, 86 S. W. 522.

3. Self-destruction also rendered the benefit certificate void and of no effect, and it is urged by defendant that the only conclusion to be drawn from the evidence and the circumstances surrounding the death of the insured is that he committed suicide. A careful consideration of the record leads to the conclusion that the learned trial court properly submitted this question to the jury.

At the time the insured became a member of the society he was, and for a considerable time prior thereto had been, a section foreman on one of the railroads leading out of Duluth. His family consist-

ed of himself, wife, and three children. He was thirty-six years of age, and had been married about twelve years, and so far as the record discloses his family relations were uniformly pleasant. He was of a jovial disposition, industrious, and with the assistance of his wife had accumulated in the neighborhood of one thousand dollars, which was on deposit to his credit in Duluth banks. A day or two before his death he was discharged from his position as section foreman by the roadmaster, because of dissatisfaction with his work; but the evidence is reasonably clear that this did not disturb him, and he proceeded about his affairs as though nothing of the kind had taken place. There is some intimation in the evidence that he was not anxious to retain that position, and that he had been looking for a situation elsewhere. On the day of his death he went to Duluth in the morning, where he made some purchases for his wife and children, returning home in the afternoon or evening in his usual spirits. A large party was had at his residence on that evening, at which a number of neighbors appeared, and music and dancing were indulged in until about eleven o'clock at night.

He planned with one of his friends to go hunting the next day, and before retiring for the night he arranged his materials, and made all plans for leaving the house at three o'clock in the morning. He owned a rifle and also a revolver. The latter was kept upon the clock shelf in his sleeping room. With all his plans made, and the party dispersed, he retired in the room with his wife. His wife went to sleep, but later on was awakened by the discharge of the revolver in her room, and, arousing herself, found that her husband had been shot in the forehead and was dead. When discovered, he was lying upon his back; one hand extending out over the edge of the bed over a slop jar, into which the revolver had fallen. Whether he had clothed himself ready to start on the hunting trip is not disclosed; nor does it appear whether he took the revolver to bed with him, or when he got hold of the firearm. It may have been under the pillow during the night. We are not advised by the evidence. At any rate, it is clear that, either through accident or design, he shot himself. When the coroner arrived the next day, the wife said to him that in her opinion her husband had shot himself, and she

later made the same statement to others. No living person witnessed the shooting, and whether it was accidental or purposely done by deceased can only be determined from the facts and circumstances disclosed by the record.

The evidence tending to show that the shooting was the deliberate act of deceased is not so conclusive as to justify interference with the verdict. The presumption is against suicide, and the burden was upon defendant to prove the contrary by a fair preponderance of the evidence. And, though some evidence points to self-destruction, other items clearly negative that theory.

We discover in the record no motive, no cause, which might have prompted insured to deliberately take his life. He had no family trouble, no despondency or brooding over other trouble, and was not in want or necessitous financial circumstances. His drinking had not been of such a nature as to impair his health or faculties, and from the record no sufficient reason can be assigned in support of defendant's contention that the jury ought to have found that he deliberately took his own life. The opinion of his wife that such was the fact was clearly not controlling. She was greatly disturbed at the time of the shooting, and for several days subsequent to the tragedy, and her opinion is of no greater force than that of any other person, based upon the facts here before the court. We are not advised that any other facts than those disclosed by the record were made the basis of her opinion. The question was for the jury. Sartell v. Royal Neighbors of America, 85 Minn. 369, 88 N. W. 985; Hale v. Life Indemnity & Inv. Co., 61 Minn. 516, 63 N. W. 1108, 52 Am. St. 616; Lindahl v. Supreme Court I. O. F., 100 Minn. 87, 95, 110 N. W. 358, 8 L. R. A. (N. S.) 916, 117 Am. St. 666; Kornig v. Western Life Indemnity Co., 102 Minn. 31, 36, 112 N. W. 1039.

4. We have fully considered all the assignments of error challenging rulings of the court on the admission of evidence and its instructions to the jury, and discover no reversible error.

Order affirmed.