DORA F. WALDEN, APPELLEE, V. BANKERS LIFE ASSOCIATION, APPELLANT.

FILED JUNE 13, 1911. NO. 16,493.

1. **Insurance: ACTION: DEFENSE OF SUICIDE: BURDEN OF PROOF.** The burden is upon an insurance company to prove by a preponderance of the evidence a controverted defense that the deceased came to his death from poison self-administered.

2. ———: ———: ———: **EVIDENCE.** In such a case, the defense is not established unless the evidence so clearly and unmistakably points to the conclusion of suicide as to exclude all reasonable probability of death by accident or from natural causes.

3. ———: **EVIDENCE.** The evidence adduced in this case is referred to and commented upon in the opinion, and *held* sufficient to sustain a verdict for the plaintiff.

4. **Evidence: WRITTEN STATEMENTS: ADMISSIBILITY.** Where a written statement, alleged to have been found in the room where the corpse of an alleged suicide was discovered, is offered in evidence as part of the *res gestæ* of the transaction of his death, and it appears that several persons were in and about the room before the statement was noticed, and all of those persons were not called as witnesses, it is not an abuse of discretion for the district court to require proof that the statement or the signature thereto is in the deceased's handwriting before admitting the statement in evidence.

5. **Trial: EVIDENCE: OFFER OF PROOF.** In order that a party may avail himself of an error in rejecting the testimony of a witness on direct examination, he must make an offer to prove the facts he expected to show by such testimony.

6. **Insurance: ACTION: EVIDENCE.** The verdict of a coroner's jury that a person upon whose remains an inquest was held died as the result of poison self-administered is not competent evidence to prove that fact in an action to recover upon a policy of insurance upon the life of the deceased.

APPEAL from the district court for Phelps county: HARRY S. DUNGAN, JUDGE. *Affirmed.*

*C. J. Beedle* and *I. M. Earle,* for appellant.

*H. M. Sinclair, W. D. Oldham, .W. P. Hall* and *T. F. Barnes, contra.*

ROOT, J.

This is an action to recover upon a certificate of insurance upon the life of the late J. Ranson Walden. The plaintiff prevailed, and the defendant appeals.

The defense is that the deceased committed suicide by the use of cyanic poison, which, if established, should defeat the action. The cause was tried to a jury. No exceptions were taken to the instructions given, nor to the rejection of those requested.

1. The most important assignment of error is that the evidence does not sustain the verdict. The burden is upon the defendant to establish its defense, and the presumption is that Dr. Walden's death was involuntary. *Travelers' Ins. Co. v. McConkey,* 127 U. S. 661; *Hardinger v. Modern Brotherhood of America,* 72 Neb. 869. The presumption may be rebutted, and must yield to facts clearly inconsistent therewith, and, if competent proof of facts and circumstances surrounding the death so clearly and unmistakably point to the conclusion of suicide as to exclude all reasonable probability of natural death or accident, the presumption will be destroyed and the defense

sustained. *Hardinger v. Modern Brotherhood of America, supra.*

The material evidence upon this issue, as we understand it, is as follows: The sheriff of Phelps county testified, in substance, that during a conversation with Dr. Walden in his office, between 10 o'clock and noon of the day the doctor died, he told him, at the request of the father of a young lady, that he ought to leave this woman alone, but the doctor replied that the affair had gone too far, and that he expected to marry the woman after procuring a divorce from his wife, and that a Mr. Falk, who accompanied the witness, told Dr. Walden that if he were in the doctor's place he would either leave the girl alone or leave the town. The interview continued five or six minutes, and the witness departed from the office at 11 o'clock or a few minutes thereafter. There is no evidence other than this testimony to prove that this woman is in life, that she resided in the state, that she was acquainted with the deceased, or that they had been in each other's company. On the other hand, the evidence is undisputed that the deceased and his wife were devoted to each other, that she frequently assisted him in his office, and that on the morning of the day of his death, when departing for his office, he had kissed her good-by. If the insinuation that Dr. Walden was infatuated with this young woman is justified by the facts, more proof could have been produced than appears in the record upon that point, and the jury might well question the existence of such a condition. Whatever may be the fact, the sheriff made no threat to Walden, and nothing is testified to that would have alarmed a timid man or discouraged an adventurous one if engaged in the unholy quest it is argued Dr. Walden was pursuing. Subsequent to the time the sheriff testifies to having talked with Dr. Walden, the dentist purchased a money order and remitted it to Detroit to pay for an office jacket which was shipped subsequent to his death. Evidently the dentist had not then determined to shuffle off this mortal coil.

About 12:30 o'clock Dr. Walden purchased a small quantity of cyanide of potassium. Walden had been in the habit of using the drug as an ingredient of a bath for dental plates and also used it in connection with plating silverware. He told the druggist that he wanted the drug "to put in his plating bath." To this point there is nothing sinister in the proof. About 1 o'clock the occupant of an office in the building where the doctor's office was located noticed that persons coming to Walden's office did not gain admission. There is no direct proof that the office door was fastened, but the fact may be inferred from the evidence. The doctor's wife was notified, and some time after 2 o'clock his father and some other person, not identified by the witnesses, upon entering the office found the doctor's corpse upon a sofa. There is some conflict in the evidence, but we think it fairly appears that the doctor's shoes had been removed, otherwise he was completely· dressed. The evidence is uncontradicted that Walden's lower limbs were not flexed, his arms were not distorted, and his features were composed as though he were asleep. A distance of from 18 inches to 2 feet from the sofa a glass containing particles of a white substance was found upon the floor. There is some testimony tending to prove that this substance may have been cyanide of potassium; but no tests were made to ascertain the truth, and there is considerable evidence tending to discredit the conclusion. The evidence is also uncontradicted that the doctor used a like glass for a cyanide bath to cleanse his dental plates. There is some testimony to the effect that there were traces of a white substance near the corners of the deceased's mouth; but other witnesses, who were in the office as early as were the witnesses who testified to the fact, testify unequivocally that they closely inspected the dead man's face and found no foreign substance thereon. The deceased while in life was subject to severe fainting spells, but the underlying cause is not testified to. The evidence is undisputed that the corpse of one whose death is caused by cyanic poison furnishes definite physical evi-

dence of the fact, and that in the instant case all of those indicia were absent. In cases where the issue is suicide, and death was caused by the application of external force, such as gunshot wounds, the proof is beyond question that death was caused by violence, and the sole question to determine is whether the deceased set the force in motion which destroyed his natural life.

In the case at bar there is no direct proof that Walden's death was unnatural; but the fact must be established, if at all, by inference from the other facts and circumstances in the evidence. The strongest proof seems to be Walden's probable written declaration found in his office upon one of his letter-heads. The evidence does not prove who first saw the communication subsequent to Walden's death, and some doubt is cast upon its authenticity by the fact that the sole witness to the identity of the handwriting is impeached to some degree by other witnesses and by facts and circumstances testified to by the witnesses. The statement is as follows: "Dear Wife and All: I am going to leave this earth. Good-bye, good-bye Jas. I am using cyanide of potassium KCN. Pray for me and may God forgive me." The doctor did not state he was taking cyanide of potassium, but that he was using it, nor did he write that he was about to commit suicide. He often used the drug in his laboratory, and it is possible that one of the fainting spells to which he was subject was approaching and he had a premonition that it would be fatal. We do not say that an inference that Dr. Walden intended to take his life by the use of cyanide of potassium cannot be logically drawn from this communication, but we do say other and innocent inferences may likewise logically be deduced therefrom. If Dr. Walden had declared that he was about to cut his throat or to blow out his brains, and there were no visible marks upon his corpse, the declaration might be accepted as proof of suicidal intent, but could not in reason be received as proof of death by the use of a revolver or of an edged tool. So in this case, in the state of the record, with positive and uncontradicted

evidence that not an indication of cyanic poisoning appeared in Dr. Walden's remains, and like proof that, had he died from the effects of that poison, those indicia would have appeared, the declarations, while evidence of suicidal intent, do not in our judgment either necessarily or logically prove that Dr. Walden destroyed his natural life by taking cyanide of potassium. The declarations were misleading and evidently untrue in some particulars. Why should the jury necessarily accept them as true in others? No physician or other witness, expert or layman, testified that Dr. Walden's death was not caused by natural means. The jury could not honestly have found that any of the invariable indicia of cyanic poisoning were present. Should nature's evidence be rejected and inferences deduced from facts not necessarily inconsistent with death from natural causes be accepted to work a forfeiture of the defendant's undertaking? We think not. If cyanic poison be not accepted as the cause of Walden's death, there is no proof of death by other unnatural means, or by any force set in motion by the deceased. In our opinion the jury had a right to say the defendant utterly failed to connect the assured's death with cyanic poison.

2. The defendant presents an instructive brief to sustain its contention that the written declaration just referred to and one other writing found in the same room, but upon another desk, were parts of the transaction whereby Walden came to his death and were admissible without proof that they are in his handwriting. The letters may have been written by the deceased and may have been lying upon the tables at the time his body was first discovered and before any one had an opportunity to place them in the position where they were found, yet these facts are not proved in the evidence. The evidence does not disclose who other than Dr. Walden first saw them subsequent to his death. No attention seems to have been given them until at least several persons had come and gone. The trial judge of necessity is vested with considerable discretion in determining whether a proper foundation has

been laid for the introduction of evidence purporting to prove the circumstances surrounding a transaction.

After the witness Kingsley testified that the letters were in Walden's handwriting, exhibit 6, which is set out in full in the first division of this opinion, was admitted and read to the jury. Exhibit 5, a copy of the other letter, was not offered, as we understand the record, although an attempt was made to prove its contents. The defendant made no offer of proof after the court sustained the objections to this oral testimony. Therefore no foundation was laid to present the alleged error for the consideration of this court. The authorities upon this point are collated in 3 Neb. Syn. Digest, p. 3136, and will not be inserted here. The original communications were delivered to Mrs. Walden, and had been destroyed or mislaid by her so they could not be produced at trial. In none of the cases cited by the defendant to sustain its proposition that the letters were part of the *res gestæ* of the transaction were the circumstances so nearly like those in the instant case that they should control us. We are satisfied that the court did not abuse its discretion in ruling as it did, and the assignment of error is not well taken. *Pledger v. Chicago, B. & Q. R. Co.,* 69 Neb. 456.

Error is assigned upon the court's refusal to admit in evidence the verdict of the coroner's jury. That jury found that Dr. Walden came to his death by cyanic poison self-administered. Authorities may be cited to sustain the admissibility of this evidence; but they are based upon an adherence to ancient law which gave great credit to those verdicts and held the coroner's inquest to be substantially an action *in rem. United States Life Ins. Co. v. Vocke, Adm'r,* 129 Ill., 557. But in this jurisdiction a forfeiture of a suicide's chattels to the state does not follow as a' matter of law upon a finding by the coroner's jury that the deceased committed suicide. There is nothing in our institutions or in our written law to justify a holding that the legislature intended to incorporate this feature of the common law into the laws of this state, and we have no

hesitancy in declaring the verdict inadmissible as substantive evidence tending to sustain the defendant's defense that Dr. Walden committed suicide. *Germania Life Ins. Co. v. Lewin*, 24 Colo. 43; *Cox v. Royal Tribe*, 42 Or. 365; *Ætna Life Ins. Co. v. Kaiser*, 115 Ky. 539, 74 S. W. 203; *Wasey v. Travelers Ins. Co.*, 126 Mich. 119.

Upon a consideration of the record, we find no error prejudicial to the defendant, and the judgment of the district court is

AFFIRMED.

SEDGWICK, J., dissenting.

The issue tried in this case was whether the deceased committed suicide or died from natural causes. The company alleged that deceased committed suicide. It had the burden of this issue; but it is a civil action, and the company was required only to produce a preponderance of the evidence. I do not believe that it will serve any useful purpose to recite and comment upon the proof of suicide contained in this record, some of which is stated in the majority opinion. If anything can be proved by human testimony to a moral certainty, this evidence, I think, proves suicide, and no good can result from denying insurance companies the equal protection of the law.

LETTON, J.

I concur in this dissent. If such decisions are made, it is useless for an insurance company to attempt to defend on the ground of suicide in any case.