# BETSY PETERSON v. PRUDENTIAL INSURANCE COMPANY OF AMERICA.[1]

July 21, 1911.

Nos. 17,135—(227.)

**Insurance policy — suicide — evidence.**
> In an action on an insurance policy, involving the question whether the insured committed suicide or was accidentally killed, the evidence is *held* to have presented a question of fact, and that it sustains the verdict of the jury.

**No reversible error.**
> The record presents no reversible error in the rulings of the court or in its instructions to the jury.

Action in the district court for Polk county to recover $1,000 upon a life insurance policy. The case was tried before Watts, J., and a jury which returned a verdict in favor of plaintiff for the amount of the policy. From an order denying defendant's motion to set aside the verdict and for a new trial, it appealed. Affirmed.

*Charles Loring* and *G. A. Youngquist,* for appellant.

*W. E. Rowe,* for respondent.

BROWN, J.

Action to recover upon a policy of insurance issued by defendant upon the life of plaintiff's husband, Arvid Peterson. Plaintiff had a verdict in the court below, and defendant appealed from an order denying its motion for a new trial.

The policy of insurance contained the provision that if, within one year from the date thereof, the insured "shall die by suicide, whether sane or insane, * * * the liability of the company shall not exceed the amount of the premiums paid on this policy." The

[1] Reported in 132 N. W. 277.

[Note] Presumption as to suicide, see note in 35 L.R.A. 263.

insured died within a year, and the defense to the action was that he committed suicide while laboring under a fit of mental aberration. Defendant offered judgment for the amount of premiums paid on the policy, resisting, liability to any further extent. That the insured came to his death from a gunshot wound, received either by accidental means or through suicidal intent, was conclusively established by the evidence. That offered by defendant, which assumed the burden of proof upon the trial, tended quite strongly to establish the fact of suicide, and that the insured was at the time at least temporarily insane, brought on in the main by reason of an accident previously happening to him, which to some extent disfigured his face, over which he had brooded to some extent. On the other hand, the evidence offered by plaintiff, with substantially equal probative force, tended to show that the discharge of the gun was the result of an accident. There were no eye-witnesses to the tragedy, and the ultimate fact was left for solution from the circumstances shown.

The theory of accidental death is not at all strained. The insured and his wife were visiting with a nearby relative on the evening of the death. A member of the party asked for a "doctor's book," which the insured had at his residence. The insured said he would go and get it. The book happened to be stored away in an upstairs room in a box, in which other books were kept. There were three of these boxes in the same place, situated in one corner of the room. Insured owned a single-barrel shot-gun, which was kept in the corner of the room where the boxes were stored. He proceeded to this room, and soon thereafter a gunshot was heard. The relatives hurried to the room, and found the insured dead. He lay upon the floor, with his feet near the boxes of books. The gun was at his feet; the butt end thereof near the books. It is not improbable that in groping about in the darkness his hand came upon the gun, and in an attempt to remove or place it in some other position it was caught upon the box and discharged. It is quite clear from the evidence that he did not load the gun at this time. Some time prior to this it had been loaned to a neighbor, and after the death it was discovered that the discharged shell was of a kind similar to those

used by the neighbor, and not of the kind used by the insured, leaving the fair inference that the neighbor had neglected to withdraw the charge before returning the gun. Nor does it appear that the insured knew whether it was loaded or unloaded at the time. He had no family trouble to disturb his mind, and, as a laborer, was fairly well to do.

In view of these facts, in connection with other circumstances tending to rebut the conclusion of suicide, as well as the general presumption against such a death, we concur with the trial court that the question was one of fact for the jury. Sartell v. Royal Neighbors of America, 85 Minn. 369, 88 N. W. 985; Lindahl v. Supreme Court I. O. F. 100 Minn. 87, 110 N. W. 358, 117 Am. St. 666, 8 L.R.A.(N.S.) 916; Kornig v. Western Life Indemnity Co. 102 Minn. 31, 112 N. W. 1039; O'Connor v. Modern Woodmen of America, 110 Minn. 18, 124 N. W. 454, 25 L.R.A.(N.S.) 1244; Walden v. Bankers (Neb.) 131 N. W. 962.

2. An examination of the other assignments of error discloses no reversible error. Conceding that the question of the insured's sanity was in issue under the pleadings, it was not reversible error to exclude the opinion of a witness upon that question, in view of the fact that the whole basis of his opinion was before the jury, and disclosed no particular act on the part of the insured from which the conclusion of insanity might legitimately follow. In any event, the ruling of the court was not followed by an offer to show that in the opinion of the witness insured was insane. For aught that appears, the opinion, if expressed, might have been that the insured was sane, or that witness was in doubt upon the question. There was, therefore, no error in the ruling. The charge of the court, taken as a whole, clearly stated the law of the case, and the portion thereof challenged by defendant presents no ground for reversal.

Order affirmed.