KROGH, Respondent, vs. MODERN BROTHERHOOD OF
.AMERICA, Appellant.

*April 10—April 29, 1913.*

*Mutual benefit insurance: Evidence: Presumption against suicide: Coroner's verdict: Admissibility: Amount recoverable: Presumption as to what one assessment would produce: Burden of proof.*

1. Where death occurs under such circumstances that it may or may not have been caused by suicide, it will be presumed to have been unintentional.

2. Where a certified copy of the verdict at a coroner's inquest was not furnished as a part of the proof of death, as required by a certificate of insurance, but such a copy was attached to the notification of death sent to the insurer by its agents, the claimant having had nothing to do with it and knowing nothing about it, such copy could not be received in evidence against the claimant as being an admission against interest.

3. Where, upon death of the insured, a mutual benefit certificate entitles the beneficiary to share in the mortuary fund to the amount of one full assessment on all members in good standing, not to exceed a certain sum, it will be presumed that one assessment would equal the maximum sum so named, and the burden of showing the contrary rests upon the insurer.

APPEAL from a judgment of the circuit court for Waupaca county: BYRON B. PARK, Circuit Judge. *Affirmed.*

The defendant is a fraternal benefit association organized and doing business under and by virtue of the laws of Iowa, and as such organization is lawfully admitted to transact business in this state. On September 14, 1908, it issued to William Krogh, the husband of the plaintiff herein, a certificate of insurance upon his life which entitles the beneficiary, *Ida Krogh,* his wife, to participate in the mortuary fund to the amount of one full assessment on all members in good standing in the fraternity, not to exceed $1,000. The certificate also provided that if the holder thereof should die by his own hands, whether sane or insane, then it should be null

and void and of no effect, and that all moneys paid or rights accrued thereunder should be absolutely forfeited. William Krogh died on June 6, 1911. Proofs of death were furnished defendant, and upon its failure to pay the insurance within the time specified in the certificate an action at law was brought thereon. The defendant set up the defense that William Krogh died by an intentional act of his own hand. The jury found (1) that the death of William Krogh was not caused by suicide, and (2) that he was sane at the time of his death. Judgment for the full amount of $1,000 was entered in favor of the plaintiff, from which the defendant appealed.

For the appellant there was a brief by *Allan V. Classon,* and oral argument by *Mr. Classon* and *Mr. Benjamin Poss.*

For the respondent there was a brief by *E. L. & E. E. Browne* and *Lloyd D. Smith,* and oral argument by *Mr. Smith.*

VINJE, J. The defendant assigns as errors (1) that the evidence fails to sustain the finding that the insured did not commit suicide; (2) that the court erred in refusing to receive in evidence the verdict of the coroner's inquest; and (3) that if plaintiff is entitled to recover she can recover only nominal damages.

1. William Krogh was about forty-two years old at the time of his death. He had been a stone mason for a number of years, and for a year previous to his death had been suffering some from chronic bowel trouble and had consulted several doctors with reference thereto. On the morning of his death he had been given a thorough examination by Dr. Wood, who testified: "He appeared very natural, very rational. I did not find any indication of any serious trouble and I told him he would get better." On his return from the doctor's office he brought a bottle of medicine, put it on a desk in the house, and went to his shop, situated from seventy-

five to a hundred feet to the rear of the house. He was somewhat of a carpenter, and when not working at his trade as a mason would spend a good deal of his time in the shop. He was married in 1904 and lived happily with his wife, owed no one anything, and had about $100 in the bank. There was some evidence that he was at times depressed and suffered somewhat from melancholy; that three days or so before his death, without any cause, he accused one of his best friends of slandering him. The day before his death he worked in the garden. The next morning he got up at 6 o'clock, his usual time, had his breakfast, and then helped his wife wash the breakfast dishes. She noticed nothing peculiar about him. He seemed as he always did. About fifteen minutes after he left the house on his return from the doctor's office, his wife had occasion to pass the shop door. On looking in, she found her husband lying on the floor, three or four feet back from the door, with a revolver on the right side of him about five feet distant. Deceased was a right-handed man. The revolver was a thirty-eight caliber double action one, that could be discharged by pulling the trigger. One chamber was empty. The barrel had been sawed or filed off. He had owned it since he was married, and usually kept it in a desk in the dining room. *Mrs. Krogh* thinks he did not get it from the desk that morning. The bullet wound was on the left side of the breast, a little to the right of the left nipple. His clothing around the wound was on fire, and the hole in the clothing was about the size of a silver dollar. The bullet was not extracted or probed for, and its direction in the body is not disclosed by the evidence. He was not dead when found, but expired shortly afterwards without making any statement or regaining consciousness. Several persons who knew him intimately testified that they had noticed nothing abnormal about him previous to his death. Immediately after his death the agents of the defendant made out proofs of death, signed by the plaintiff, wherein it was stated that

the deceased came to his death voluntarily and intentionally, by his own hand. Subsequently the plaintiff sent amended proofs of death wherein she said that she did not understand the full meaning of the statement contained in the first proof and that she had no knowledge or belief that Krogh met his death voluntarily by his own hand.

Such in brief is the evidence showing the conditions and circumstances under which the insured came to his death. That such conditions and circumstances are in many respects consistent with the theory of suicide must be admitted. But they are equally consistent with accidental death. That he died as the result of a bullet wound from the revolver found beside him, discharged by himself, seems quite certain. Whether such discharge was intentional or accidental is the only mooted question. The wound was in a place where it could have been intentionally self-inflicted. It was likewise in a place where it could have been accidentally self-inflicted. In either case, if the revolver happened to be held close to the person the result as found would or might have followed. So we can reach no conclusion from the location or nature of the wound as to whether it was intentionally or accidentally inflicted. It may be said to be strange that a revolver should be so held that if accidentally discharged it would result in a wound like the one in question. The answer is, that very strange cases of accidental shooting with revolvers do occur, especially with such a short one as this was; and that men, be they never so careful, at times meet with accidents that seem quite improbable.

The evidence fails to disclose any sufficient or satisfactory reason for suicide. The insured had no financial or domestic troubles of any kind so far as is shown. His disposition seems to have always been an even one. He was a man who was quiet and self-contained, though not of a brooding nature, and aside from a partial impairment of health for the last year there was discovered nothing abnormal about him.

He purchased a bottle of medicine for himself the morning he died, presumably after the visit to the doctor. That he should do so intending suicide seems hardly probable. However, it must be conceded that the theory against suicide, aside from the presumption of law that obtains against it, based upon the whole evidence, is not entirely satisfactory. Neither does an hypothesis in favor of suicide meet all the conditions of the evidence. In this situation resort must be had to the legal presumption that, where death occurs under such circumstances that it may or may not have been caused by suicide, it will be presumed to have been unintentional, and the burden rests upon the defendant to prove the contrary. *Agen v. Metropolitan L. Ins. Co.* 105 Wis. 217, 80 N. W. 1020; *Rohloff v. Aid Asso.* 130 Wis. 61, 109 N. W. 989; *Cady v. Fidelity & C. Co.* 134 Wis. 322, 113 N. W. 967. The defendant has not met that burden here. Especially must it be so held where the jury has found against it and the verdict to that effect has the approval of the trial court. In addition to the cases cited above, counsel for respondent calls our attention to the following cases from other jurisdictions that sustain the rule as to the presumption against suicide: *Scott v. Sovereign Camp W. O. W.* 149 Iowa, 562, 129 N. W. 302; *Paulsen v. Modern Woodmen,* 21 N. Dak. 235, 130 N. W. 231; *Walden v. Bankers' Life Asso.* 89 Neb. 546, 131 N. W. 962; *Wheelock v. Home L. Ins. Co.* 115 Minn. 177, 131 N. W. 1081; *Peterson v. Prudential Ins. Co.* 115 Minn. 232, 132 N. W. 277; *Equitable L. Ins. Co. v. Hebert,* 37 Ind. App. 373, 76 N. E. 1023; *Masonic L. Asso. v. Pollard's Guardian,* 121 Ky. 349, 89 S. W. 219. The appellant, to sustain the contention that death was suicidal, relies upon *Voelkel v. Supreme Tent K. M. W.* 116 Wis. 202, 92 N. W. 1104; *Hart v. Fraternal Alliance,* 108 Wis. 490, 84 N. W. 851; *Richey v. Woodmen of the World,* 163 Mo. App. 235, 146 S. W. 461; *Hardinger v. Modern Brotherhood,* 72 Neb. 860, 101 N. W. 983, 103 N. W. 74; *Ingh-*

*ram v. National Union,* 103 Iowa, 395, 72 N. W. 559. These cases differ so in their facts from the case at bar that no effort will be made to distinguish them. They are referred to because they may be of use in analogous cases.

2. It is claimed the court erred in refusing to receive in evidence the verdict of the coroner's inquest. The certificate of insurance required that, if a coroner's inquest has been held, a copy of the coroner's verdict or the verdict of the coroner's jury, properly certified, shall be furnished by the claimant as a part of the proof of death. That was not done in this case. No certified copy of the coroner's verdict was attached to the proofs of death furnished by the plaintiff. But instead, it seems that such a copy was attached to a notification of the death of Krogh made by the agents of the defendant to it as required by its by-laws. And it was this copy that was sought to be introduced. The plaintiff had had nothing to do with it and knew nothing about it. Had it been a part of the proofs of death furnished by her it would have been competent as an admission against interest, which, while not conclusive, would have been *prima facie* evidence against her. *Bachmeyer v. Mut. R. F. L. Asso.* 82 Wis. 255, 52 N. W. 101; *Hart v. Fraternal Alliance,* 108 Wis. 490, 84 N. W. 851; *Hanna v. Connecticut Mut. L. Ins. Co.* 150 N. Y. 526, 44 N. E. 1099; *Ins. Co. v. Newton,* 22 Wall. 32. But where the coroner's verdict is furnished by the company's agents the rule does not apply. Nothing they do without the knowledge or consent of the plaintiff or beneficiaries can be received as admissions against them, and the verdict of the coroner's jury was properly excluded. *Olwell v. Milwaukee St. R. Co.* 92 Wis. 330, 66 N. W. 362; *Hedger v. State,* 144 Wis. 279, 128 N. W. 80; *Cox v. Royal Tribe of Joseph,* 42 Oreg. 365, 71 Pac. 73, 60 L. R. A. 620; *Dougherty v. Pacific M. L. Ins. Co.* 154 Pa. St. 385, 25 Atl. 739.

3. The claim that plaintiff can recover only nominal damages is based upon the argument that since the certificate entitles her to share in the mortuary fund to the amount of one full assessment on all members in good standing in the fraternity, not to exceed $1,000, and since there is no proof what such an assessment would amount to, she is entitled to only nominal damages. In *Jackson v. Northwestern M. R. Asso.* 73 Wis. 507, 41 N. W. 708, it was held that an action at law was maintainable on a benefit certificate; that it was not necessary to go into a court of equity to enforce it; and that under the pleadings in that case plaintiff could recover substantial damages. It was not, however, decided in that case upon whom the burden rested to show how much an assessment would amount to. The Iowa court has held that the burden rests upon the plaintiff. *Bailey v. Mut. Ben. Asso.* 71 Iowa, 689, 27 N. W. 770, which was followed in *Rainsbarger v. Union Mut. Aid Asso.* 72 Iowa, 191, 33 N. W. 626. That the rule in these cases has since been at least limited, if not overruled, is apparent from the language used in *Hart v. Nat. M. A. Asso.* 105 Iowa, 717, 725, 75 N. W. 508, where the court says:

"We are of the opinion that the certificate in suit is a contract for the payment of fixed sums of money upon the happening of special contingencies, but subject to the limitation that the liability of the defendant shall not exceed the sum which could be realized from one quarterly payment made by persons who were members of the association at the time of the accident; that it must be presumed, in the absence of a showing to the contrary, that the sum which would be realized from such payment would be sufficient to pay the sums for which the certificate provides; and that, if it would not be sufficient, it is necessary for the defendant, in order to reduce the amount of plaintiff's recovery, to plead and show the fact. It is not necessary in the first instance to compel the defendant to make an assessment, even though it show that it has not in its possession funds with which to pay the

amount due; but an action at law may be maintained to obtain judgment for the amount shown to be due, and a recovery for that amount be had, unless it be reduced by a showing on the part of the defendant that it would exceed the amount which an assessment of two dollars made upon persons who were its members at the time of the accident would produce. The defendant did not plead or prove any fact which would have reduced the amount for the payment of which the certificate, on its face, provides."

The limitation of the certificate in that case was, "This association does not agree to pay to any certificate holder or beneficiary, in any case, either by way of indemnity or a benefit, a greater sum than is realized by said association from one quarterly payment of two dollars made and collected from those who were members at the time of the accident." We think the better rule is to place such burden upon the defendant, and to hold that in the absence of any proof on the subject it will be presumed that one assessment equals the maximum sum named in the certificate. If it does not, it is easy for the defendant to interpose such defense and prove it. All the books, records, lists of members in good standing, and evidence necessary for such proof are in its possession and peculiarly within its knowledge. It would be extremely burdensome and expensive to require plaintiff in each case to prove such fact in order to make out a *prima facie* case. This rule has the sanction of the following authorities: *Lueders' Ex'r v. Hartford L. & A. Ins. Co.* 4 McCrary, 149, 12 Fed. 465, 473; *Elkhart M. A., B. & R. Asso. v. Houghton,* 103 Ind. 286, 2 N. E. 763; *Supreme Lodge K. of P. v. Knight,* 117 Ind. 489, 20 N. E. 479; *People's Mut. Ben. Soc. v. McKay,* 141 Ind. 415, 39 N. E. 231; *Supreme Council A. L. of H. v. Anderson,* 61 Tex. 296.

*By the Court.*—Judgment affirmed.