## STATE EX REL. OLIVER IRON MINING COMPANY v. DISTRICT COURT FOR ST. LOUIS COUNTY AND OTHERS.[1]

October 12, 1917.

No. 20,651.

**Workmen's Compensation Act — violent death — accident or suicide.**

When violent death is shown, the presumption arises that it was not self-inflicted. As between accident and suicide, the law supposes accident until the contrary is shown. The evidence in this case is not conclusive of suicide and sustains a finding of accident.

Upon the relation of the Oliver Iron Mining Company the supreme court granted its writ of certiorari, directed to the district court for St. Louis county, to review the proceedings in that court, Hughes, J., under the Workmen's Compensation Act brought by Aloijzi Arko, widow of Vinko Arko, employee, against relator, as employer, for the death of her husband. Affirmed.

*Alger R. Syme,* for relator.
*L. R. Simons,* for respondent.

HALLAM, J.

Vinko Arko was employed by the Oliver Iron Mining Company as an underground miner. He worked with another employee, Joe Grum. They would blast and then shovel the loose earth and ore. They used for blasting, dynamite, fuses and dynamite caps. The dynamite was

[1]Reported in 164 N. W. 582.

kept near by in a box, under lock and key.  On the morning of February 29, 1917, the two men were engaged in shoveling ore that had been loosened by a blast.  Shortly after they started work, Arko left his work and went to a "cross cut", a usual thing for that time of the day.  In a few minutes an explosion was heard and Arko was about 100 feet from his place of work lying on the ground, dead, his chest and vitals badly torn by explosion.

The trial court allowed compensation under the compensation act to Arko's wife.  The employer brings certiorari.  The assignments of error raise the one question whether the death of deceased was caused by accident arising out of and in the course of his employment, or by suicide.  If the death was caused by accident there seems small doubt that it was an accident arising out of and in the course of the employment.  The question in the case is, therefore, was the cause of the death accident or suicide?

No one saw the occurrence and the circumstantial evidence is very meager.  There was no occasion to use explosives for blasting at that time and there would be none until the loose dirt and ore had been shoveled out.  This would take about two hours.  There was therefore no occasion for deceased to go for explosives at that time or for him to have them on his person.  There is evidence that two burnt out fuses, such as were used in exploding dynamite, were found lying near his body, though this is denied.  The box containing the explosives was locked, but the key was in Grum's jacket and this lay on the box so that deceased had easy access to it.  There is evidence that deceased "wasn't feeling just right" and "didn't look * * * just like natural" that morning.  When found he was lying on his back in a position in which it is argued he would not be likely to accidentally fall and there was blood on the drift directly above him, but none on the sides, and from this it is contended that he must have been lying in that position when the explosion occurred.  Relator argues that deceased must have gone to the box and obtained explosives, and that he then lay on his back and deliberately committed suicide.

On the other hand the evidence shows that, after the explosion, Grum found his jacket on the dynamite box in the same place as he left it when he went to work, with nothing to indicate that it had been dis-

turbed. There is evidence that deceased, as did other men also, sometimes carried dynamite caps in his pockets and that these easily explode. There is some evidence that the explosion of dynamite caps was sufficient to cause the injury which deceased suffered, though this is denied. The evidence is that the clothing and watch of deceased were blown outward, indicating that the explosive that killed him was carried in or under his clothing.

Other facts and circumstances are mentioned in the testimony, most of them unimportant and none or all of them conclusive of either theory. If death is not the result of suicide, the employer must respond. The evidence may be too meager to establish affirmatively either accident or suicide, but, when violent death is shown, the presumption arises that it was not self-inflicted. "As between accident and suicide the law for logical and sensible reasons supposes accident," until the contrary is shown. McAlpine v. Fidelity & Casualty Co. 134 Minn. 192, 158 N. W. 967; Hale v. Life Ind. & Inv. Co. 61 Minn. 516, 63 N. W. 1108, 52 Am. St. 616; Lindahl v. Supreme Court I. O. F. 100 Minn. 87, 110 N. W. 358, 8 L.R.A.(N.S.) 916, 117 Am. St. 666; Kornig v. Western Life Indemnity Co. 102 Minn. 31, 112 N. W. 1039; O'Connor v. Modern Woodmen of America, 110 Minn. 18, 124 N. W. 454, 25 L.R.A.(N.S.) 1244; Peterson v. Prudential Ins. Co. 115 Minn. 232, 132 N. W. 277; Gilbert v. City of Tracy, 115 Minn. 443, 132 N. W. 752; Milwaukee W. Fuel Co. v. Industrial Com. 159 Wis. 635, 150 N. W. 998. The evidence is surely not conclusive of suicide. We conclude that the determination of the trial court that death was accidental is sustained.

Judgment affirmed.