## JULIA HEGNA v. MODERN BROTHERHOOD OF AMERICA.[1]

June 28, 1912.

Nos. 17,651—(181).

**Life insurance — intoxication question for jury.**

In an action to recover upon a life insurance policy, in which the defense interposed was that the insured's death was caused by his intoxication, a condition vitiating the policy, it is *held* that the question whether the insured was intoxicated at the time of his death was, on the evidence presented, an issue of fact, and properly submitted to the jury.

**New trial denied.**

The trial court did not abuse its discretion in denying a new trial.

Action in the district court for Yellow Medicine county to recover $2,000 upon a benefit certificate. The complaint alleged that deceased during his lifetime complied with all the requirements of the articles of the association of defendant and with all its regulations and by-laws in force at the time of issue of the certificate; that he died on July 6, 1910, but not from any of the causes excepted in the certificate or by-laws of defendant, and that more than ninety days before the commencement of the action, plaintiff made and delivered to defendant due notice and proof of death of Olai Hegna, as provided in the policy of insurance, and that the policy had not been paid, although payment thereof had been demanded. The answer set up that the death of the insured was the result, directly or indirectly, from the intemperate use of alcoholic drinks and thereby the benefit certificate became absolutely void and all payments forfeited to the society.

The case was tried before Powers, J., and a jury which returned a verdict in favor of plaintiff for the amount demanded. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

[1] Reported in 136 N. W. 1035.

*Blythe, Markley, Rule & Smith, H. P. Bengtson* and *Johnson & Lende,* for appellant.

*Tom Davis, Ernest A. Michel, D. L. Kennedy, Paul D. Stratton* and *John I. Davis,* for respondent.

BROWN, J.

Action to recover upon an insurance policy issued by defendant on the life of Olai Hegna, payable on his death to his mother, plaintiff in the action. Plaintiff had a verdict, and defendant appealed from an order denying its alternative motion for judgment or a new trial.

One of the conditions of the policy provided that "if any member of this society, heretofore or hereafter adopted, shall become intemperate in the use of alcoholic drinks, or in the use of drugs or narcotics, or if his death shall result directly or indirectly from his intemperate use of such alcoholic drinks, drugs, or narcotics, then the benefit certificate held by such member shall, by such acts, become and be absolutely null and void, and all payments made thereon shall be thereby forfeited to the society." On the morning of July 6, 1910, the insured was found dead on a railroad track, having been run over and killed by a passing train. The circumstances surrounding the injury and death are not made clear by the evidence. It was the contention on the trial below that insured was intoxicated at the time, and lay down on the track and went to sleep, and thus met his death. That he was intoxicated, and that his condition in that respect was the direct cause of his death, was the sole defense interposed on the trial.

Whether a single occasion of intoxication, though the cause of death, would vitiate the policy, under the clause thereof that if death shall result directly or indirectly from his *intemperate use of alcoholic drinks,* etc., was not presented to the court below, and the trial proceeded on the theory that, if the insured was intoxicated at the time and such condition was the direct or indirect cause of his death, no recovery could be had. So we are not required to construe the contract in this respect. O'Connor v. Modern Woodmen of America, 110 Minn. 18, 124 N. W. 454. We come, then, directly to the ques-

tion whether the evidence presented an issue of fact upon the question so litigated.

The insured was a young man twenty-two years of age, residing with his parents on their farm near Hanley Falls, some ten or twelve miles from Granite Falls, this state. He went to the latter place on the Fourth of July to attend a celebration, and there remained until the time of his death. He was joined on the fifth by an acquaintance, and they appear to have been together most of the time during the day. That they patronized the saloons during the day and evening there is no serious question. The companion became badly intoxicated, and it is claimed decedent did also. There is evidence to sustain this claim, but it is not conclusive. Both young men proceeded to the depot about twelve o'clock at night, intending to take the train scheduled to depart some time after that hour for their home. After reaching the depot the companion lay down upon the station platform and went to sleep, and he was unable to say what became of his friend. He awoke at about four o'clock, and, not finding decedent, returned to town, about a mile away, and found lodging in a convenient barn, where he remained until morning, wholly unaware that decedent had been killed upon the railroad track at the station. His recollection of what occurred during the afternoon and evening of the fifth was somewhat uncertain, as shown by his testimony, but he acknowledged that he was intoxicated, and he thought, also, that decedent was in the same condition. Decedent was killed by a passenger train at about four o'clock in the morning.

One witness was called by defendant, who claimed to have had a conversation with him after he reached the railroad station, and he testified explicitly that decedent was then intoxicated and staggering around on the station platform. It appeared, however, that the witness had no personal acquaintance with decedent, and his conclusion that the intoxicated person with whom he conversed was decedent was based on information claimed to have been communicated to him by a bus driver, and his subsequent identification of the dead body. The bus driver denied on the stand that he told the witness that the intoxicated person at the station was decedent, and, if credit is to be given this denial, the identification of decedent by the witness was somewhat shaken. Other witnesses called by defendant gave

testimony tending to show that decedent was under the influence of intoxicants on the afternoon and evening of the fifth, and up to the time the two parties started for the station to take the train home; but some of them expressed the opinion that he was not so far intoxicated as to be incapable of taking care of himself.

On the other hand, witnesses who knew decedent, his personal acquaintances, called by plaintiff, testified that they were either in the company of decedent during the afternoon and evening, or saw him about town, and each testified that, while he appeared to have been drinking to some extent, he was not intoxicated. One witness attended a ball game with decedent during the afternoon, and testified that he was at that time sober, and was in the same condition during the evening.

In this state of the evidence we are unable to say that the trial court erred in submitting the case to the jury, or abused its discretion in denying a new trial. It is clear that defendant was not entitled to an instructed verdict. The witnesses were before the court, and with some of them, no doubt, the learned trial judge had a personal acquaintance, and was in position to determine, with a degree of accuracy not possessed by this court, their credibility and the weight to be given their testimony. And since he approved the verdict, the rule guiding us in such cases will not permit of interference. The verdict is not clearly and palpably against the evidence.

Order affirmed.