ELIZABETH H. SARTELL v. ROYAL NEIGHBORS OF AMERICA.[1]

January 31, 1902.

Nos. 12,860—(146).

Life Insurance—Suicide—Burden of Proof.

Where the defense to an action on a life insurance policy is that the insured committed suicide, the burden is upon defendant to maintain that issue.

Order of Argument.

The court directed plaintiff's counsel to make the closing argument, upon the reasoning that the burden of proving death by suicide had shifted, and that it was incumbent upon plaintiff to prove the contrary. *Held*, that the order of argument was correct, although a wrong reason was given.

Verdict Sustained by Evidence.

Evidence examined, and *held* that whether the insured came to his death by intentional self-destruction, or from some other cause, was a question for the jury, and their verdict is supported by the evidence.

Action in the district court for Stearns county to recover $2,000 and interest upon a policy of life insurance. The case was tried before Searle, J., and a jury, which rendered a verdict in favor of plaintiff for the sum demanded. From an order denying a motion for judgment in its favor notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*J. G. Johnson* and *J. E. C. Robinson*, for appellant.

*Stewart & Brower*, for respondent.

LEWIS, J.

On July 9, 1898, a benefit certificate for the sum of $2,000 was issued by appellant to Elizabeth H. Sartell, beneficiary, wife of Edgar P. Sartell, a member in good standing. On March 18, 1900, Sartell was found dead in a small warehouse in the rear of his residence. This action was brought by the wife to recover the amount of the policy. The defense interposed was that the deceased came to his death by suicide; the policy providing that death

[1] Reported in 88 N. W. 985.

85 M.—24

of a member by his own hand rendered the policy null and void. A verdict was returned for the full amount of the policy.

Upon the trial, appellant offered in evidence what are termed "proofs of death," consisting of the following-named documents: "Identity of Party," "Affidavit of Sexton or Undertaker," "Proof of Age," "Affidavit of Officiating Clergyman," "Medical Proof of Death," and "Coroner's Certificate"; also an affidavit from the claimant, in which she states that the documents above described had been executed at her request, and that the statements therein contained were adopted by her, and agreed to be the basis of her claim. The affidavit of the clergyman contained a statement that death was caused by decedent's own act, and the medical proof of the coroner contained the statement that the immediate cause of Sartell's death was suicide by shooting through the head.

The following facts were testified to at the trial: After eating his dinner at noon on March 18, 1900, Sartell put his watch and pocketbooks under the pillow in his bed, and left the house. After he had been gone something over two hours, his wife found the things under the pillow, and also discovered that his revolver was gone from its accustomed place. She at once telephoned the chief of police, and told him,—so he testified,—that she was afraid her husband was going to do harm to himself, and sent him up the river bank, through the woods, to try and find him. Then she telephoned her alarm to her husband's brothers, residing some six miles distant. At about 4 o'clock in the afternoon Sartell was found dead in the warehouse, in a reclining posture, on a bale of hay, with a small hole in the right temple, and another on the left side, a little higher up; and a revolver was lying on the floor, a little in front of him. These facts, in connection with the admission of respondent, as contained in the proofs of death, are relied upon by appellant as conclusive that death was caused by self-destruction.

But the following facts were also shown, and are relied upon by respondent as being sufficient to make it a doubtful question whether death was caused by suicide, accident, or some other means: Sartell's family relations were pleasant. He was of a cheerful and hopeful nature; was in good financial condition, owing

nothing, and his business, while small, brought sufficient income for the support of himself and family; and shortly before his death he had made a contract with his brothers, who were operating a profitable lumber business, to enter their firm, from which connection he anticipated not only agreeable surroundings, but brighter business prospects. There was nothing unusual or strange either in his appearance or demeanor on the day of his death. In company with his family and some visiting friends, he ate a hearty dinner, and, as usual, after the meal he went to the barn to attend to chores.

The record contains no evidence, except inferential, that the weapon found at his feet was the one missing from the house, nor that it had been loaded or recently discharged. Neither was there any evidence as to its caliber, nor was it shown what size bullet penetrated the head. In fact, there was no direct evidence that the wound was caused by a bullet, and there were no powder marks visible on the head. No post mortem examination was held, and the coroner reported "suicide" as the result of casual observation only. There was evidence tending to show that the warehouse was infested with rats, and that he had occasionally shot them. He was engaged in the feed business; did his own work about the barn and warehouse; and consequently his presence there does not imply suicidal intent, which presumption sometimes follows where the deceased is found in a secluded and unfrequented place.

1. At the close of the evidence it was claimed by appellant's attorney that the burden of proving death by suicide was upon appellant, and that it was entitled to make the closing argument. The court instructed the jury to the effect that in ordinary cases the burden would be upon the party claiming a suicidal defense to establish that fact, but that in this particular case, because respondent adopted the coroner's statement that death was caused by self-murder, the burden had shifted, and it was incumbent upon her to show the contrary, but further directed that it was respondent's privilege to close the case to the jury.

This ruling is assigned as error. Conceding, for the present, that the court correctly instructed the jury as to the burden of

proof, it does not follow that appellant had the right to the closing argument. Under G. S. 1894, § 5371, respondent was entitled to the closing argument, unless for special reasons the court otherwise directed. The reason given for assigning to respondent the closing of the case was that the burden of proof had shifted to her. The order of the court on this point was in accordance with the statute, and, in the absence of any special reason for a change, no error is apparent; and, if a wrong reason was assigned, appellant cannot complain of that.

2. It is argued that the verdict is not sustained by the evidence, and that the court should have directed a verdict for appellant. This argument is based mainly upon the proposition that the proofs of death, which were signed and sent in by respondent, were conclusive upon that subject, and that the statements therein contained had not been overcome by respondent's evidence. In this connection we will refer to the position taken by the trial court on the question of burden of proof. The complaint alleged simply the issuing of the membership certificate and Mr. Sartell's death, which facts were admitted in the answer, which charged that death was caused by suicide. When the case came on for trial, respondent rested after introducing the certificate of membership. Appellant then introduced the proofs of death, and certain witnesses upon the question of suicide, whereupon respondent presented evidence tending to show that Mr. Sartell came to his death by accident or causes other than voluntary self-destruction. In explanation of her adoption of the proofs of death, respondent stated that she signed the papers attributing death to suicide without knowing their contents, and, while admitting that she was alarmed by the circumstances of her husband's absence from the house, denied that she executed the proofs with the intention of making an admission that he had wilfully ended his life.

Much confusion has arisen from what has been termed the "shifting of the burden of proof." As a usual thing, of course, the burden of proof is upon the party assuming the affirmative of an issue. In this particular case the burden was upon respondent to show that her husband was dead, and that fact was admitted by appellant in its answer; but the issue that death had occurred by

suicide was alleged by appellant, and the burden of proof was upon it. Respondent's case was admitted upon the pleadings, and the action proceeded upon the issue presented by appellant, where the burden remained until the close of the case. The question of suicide was not an issue offered by respondent. Consequently the burden never shifted, and the court was in error in its instruction to the jury that respondent assumed the burden of proving that her husband did not intentionally end his life; but it was error without prejudice to appellant. The court, however, was correct in its instruction that it was incumbent upon her to explain to the satisfaction of the jury the admission of death by suicide made in the proofs of death. It was proper to receive those documents in evidence, and, their execution having been admitted, it devolved upon her to show either that the contents were not correct, or that she had executed them under a misapprehension of the facts. While the assignments of error do not directly attack the correctness of the rulings of the court in these respects, it seems necessary to refer to them, and to the manner in which the case was submitted to the jury, in order to determine whether or not the evidence, as a whole, is sufficient to sustain the verdict.

It was held by this court in the case of Hale v. Life Ind. & Inv. Co., 61 Minn. 516, 63 N. W. 1108, that in an action upon an insurance policy, where the defense is suicide, the burden of proving it is upon the party so alleging; also that ordinarily, in the absence of proof that death resulted from other than accidental or natural causes, suicide will not be presumed. There are many cases in the books to the same effect. That the proofs of death were competent to establish suicide, but that the effect thereof might be explained and overcome by other evidence, see Spruill v. Northwestern, 120 N. C. 141, 27 S. E. 39; Travelers v. Nitterhouse, 11 Ind. App. 155, 38 N. E. 1110; Insurance Co. v. Higginbotham, 95 U. S. 380; Modern v. Kozak (Neb.) 88 N. W. 248; Pythias Knights Supreme Lodge v. Beck, 181 U. S. 49, 21 Sup. Ct. 532. In our opinion, the evidence offered by respondent in explanation of her adoption of the proofs of death, stating that deceased had committed suicide, was sufficient to take that question to the jury. Her conduct in sending for the chief of police and in searching for

her husband, under the circumstances of his disappearance, was not necessarily an admission on her part that he had taken his own life; and it was natural that she should assume that fact upon first impressions, as did the officer and coroner.

Upon the main issue in the case,—as to what caused Mr. Sartell's death,—it was clearly a question for the jury to decide from all the evidence. It by no means conclusively appears how the man met his death. The facts tending to show suicide are not nearly so strong ·as in Travelers v. Nicklas, 88 Md. 490, 41 Atl. 906, and Modern v. Kozak, supra.

Order affirmed.