Mary HOEFT, et al., Appellants,

v.

HENNEPIN COUNTY, et al., Respondents,

City of St. Louis Park, et al., Respondents.

No. A07–1587.

Court of Appeals of Minnesota.

Aug. 19, 2008.

718

Michael D. Schwartz, Joseph J. Walsh, Michael D. Schwartz, P.A., Chanhassen, MN, for Appellants.

Michael O. Freeman, Hennepin County Attorney, Michael B. Miller, Senior Assistant County Attorney, Minneapolis, MN, for Respondents Hennepin County, et al.

Thomas M. Scott, Campbell Knutson, P.A., Eagan, MN, for Respondents City of St. Louis Park, et al.

Considered and decided by PETERSON, Presiding Judge; KALITOWSKI, Judge; and HALBROOKS, Judge.

## OPINION

HALBROOKS, Judge.

Appellants' son, an officer of the St. Louis Park Police Department, was found dead in his patrol car while on duty one evening. The Hennepin County Medical Examiner's Office ruled the death a suicide, which was reflected on the death certificate. Appellants, who disagree about the manner of their son's death, brought a declaratory-judgment action against respondents City of St. Louis Park, St. Louis Park Police Department, Hennepin County, Hennepin County Sheriff's Office, and Hennepin County Medical Examiner's Office, seeking to compel the medical examiner to amend their son's death certificate to reflect that the manner of his death was an accident. The district court dismissed appellants' claim on the ground that the action did not present a justiciable controversy. Because we conclude that the district court correctly determined that appellants' declaratory-judgment action does not present a justiciable controversy and did not abuse its discretion by denying appellants' motion to amend, we affirm.

## FACTS

Appellants Mary and Terry Hoeft are the parents of Ryan Hoeft (Hoeft). Hoeft was an officer with the St. Louis Park Police Department at the time of his death. At approximately 11:55 p.m. on November 6, 2001, a fellow officer found Hoeft in the driver's seat of his patrol car with a fatal .45 caliber gunshot wound to the head. The fatal shot had been fired from Hoeft's service weapon.

The St. Louis Park Police Department requested that the Hennepin County Sheriff's Office assist in investigating Hoeft's death. Upon completion of the investigation, the Hennepin County Medical Examiner concluded that Hoeft's death was a suicide and issued a death certificate on February 8, 2002, that stated that Hoeft's manner of death was suicide. The Hennepin County Sheriff's Office subsequently returned Hoeft's service weapon and patrol car to the St. Louis Park Police Department.

Appellants disagree with the medical examiner's conclusion that Hoeft committed suicide, believing instead that his death was the result of an accidental discharge of his service weapon. They hired several

investigatory and forensic medical experts to review the circumstances surrounding Hoeft's death. Based on these experts' independent investigations, appellants theorize that, on the night in question, Hoeft removed his weapon from its holster and placed it on the front passenger seat of his squad car so that he could safely process an arrestee at a local detention center. Appellants believe that Hoeft forgot to immediately re-holster his weapon when he resumed patrol and was in the process of securing his weapon in its holster when his squad car hit a curb. As a result of the impact, the weapon accidentally discharged, killing Hoeft.

Appellants produced evidence supporting this theory and identifying what they allege are shortcomings in the medical examiner's investigation of Hoeft's death. For example, appellants provided evidence that Hoeft was a happy and stable individual who was looking ahead to a future with his girlfriend, whom he planned to propose to, at the time of his death. Further, the accident reconstructionist and the forensic medical experts hired by appellants all concluded that Hoeft's death was the result of an accident.

Appellants provided the medical examiner with the evidence and conclusions reached by their independent investigators. In response, in the spring of 2004, the medical examiner asked two out-of-state forensic pathologists to review Hoeft's case in light of the additional information that appellants provided. Ultimately, the medical examiner reaffirmed his earlier conclusion that Hoeft's death was a suicide.

On February 14, 2007, appellants brought a declaratory-judgment action. Although appellants sought multiple declarations, all were ultimately aimed at compelling the medical examiner to amend Hoeft's death certificate to reflect that the manner of his death was an accident. After filing this action, appellants learned that St. Louis Park had provided Hoeft with a life-insurance policy through Prudential Insurance Co. and moved to amend their complaint to add Prudential as a defendant.

Respondents moved to dismiss appellants' action on the ground that it did not present a justiciable controversy. The district court granted respondents' motion and dismissed the action in its entirety. The district court also denied appellants' motion to amend their complaint to incorporate issues related to Hoeft's life-insurance policy and to add Prudential as a defendant. This appeal follows.

## ISSUES

1. Did the district court correctly conclude that appellants' declaratory-judgment action, seeking to compel the medical examiner to amend their son's death certificate, failed to present a justiciable controversy?

2. Did the district court abuse its discretion by denying appellants leave to amend their complaint?

## ANALYSIS

This case presents an issue of first impression concerning what remedy, if any, parents in Minnesota have when they believe that their child's death certificate reflects an inaccurate statement of the manner of death. Minnesota law generally gives both the county attorney and medical examiner discretion about whether to conduct "inquests" into a person's death. Minn.Stat. § 390.11, subd. 5 (2006).[1] But

---

1. Minn.Stat. §§ 390.005–.35 (2006) are now generally applicable statewide. *See* Minn. Stat. § 390.005, subd. 1 (stating that each county must have a medical examiner). But

if the death is the result of violence or occurred under unusual or mysterious circumstances, there must be an investigation. Minn.Stat. § 390.32, subd. 1 (2006). If the county attorney conducts the investigation, he or she does so using the judicial process and before the district court.[2] *Id.*, subd. 9 (2006). If the county attorney does not conduct the investigation, he or she "shall inform the medical examiner who shall find the cause of death and sign and file a death record." *Id.*, subd. 10 (2006). When the death occurs outside of a correctional facility, the medical examiner is the only person permitted to file or amend a death record with the state registrar in cases of likely or suspected suicide or accidental death. Minn.Stat. § 390.23 (2006).[3]

## I.

■ The Uniform Declaratory Judgment Act (UDJA or "the act") gives courts "within their respective jurisdictions" the power to "declare rights, status, and other legal relations." Minn.Stat. § 555.01 (2006). But the UDJA "cannot create a cause of action that does not otherwise exist." *Alliance for Metro. Stability v. Metro. Council*, 671 N.W.2d 905, 916 (Minn.App.2003). Issues of fact in a declaratory-judgment action are to be tried as they would be in a typical civil action. Minn.Stat. § 555.09 (2006). Thus, a disputed fact in a declaratory-judgment action is established upon proof by a preponderance of the evidence. *See Wick v. Widdell*, 276 Minn. 51, 53–54, 149 N.W.2d 20, 22 (1967) ("In an ordinary civil action the plaintiff has the burden of proving every essential element of his case ... by a fair preponderance of the evidence."). The UDJA is remedial in nature and is to be liberally construed and administered to "settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." Minn. Stat. § 555.12 (2006).

■ A declaratory-judgment action must present a justiciable controversy or a district court has no jurisdiction to declare rights under the act. *Onvoy, Inc. v. AL-LETE, Inc.*, 736 N.W.2d 611, 617 (Minn. 2007). The UDJA does not, by itself, confer jurisdiction on a court over the action. *Alliance for Metro. Stability*, 671 N.W.2d at 915. A justiciable controversy exists if "the claim (1) involves definite and concrete assertions of right that emanate from a legal source, (2) involves a genuine conflict in tangible interests between parties with adverse interests, and (3) is capable of specific resolution by judgment rather than presenting hypothetical facts that would form an advisory opinion." *Onvoy, Inc.*, 736 N.W.2d at 617–18. Determining whether a justiciable controversy exists, and thus whether a district court has juris-

---

at the time of Hoeft's death, the Hennepin County Medical Examiner's Office was governed by Minn.Stat. § 383B.225 (2000) and exempted from the requirements of chapter 390 by Minn.Stat. § 390.006 (2000). Sections 383B.225 and 390.006 were repealed in 2006. 2006 Minn. Laws ch. 260, art. 8, § 21, at 829. These alterations to the statutory framework governing the Hennepin County Medical Examiner's Office do not affect our analysis or decision.

2. At oral argument, counsel for Hennepin County stated that this process is not utilized in the county and that it relies exclusively on the medical examiner to determine matters relating to a person's death.

3. The Minnesota Rules echo this statutory requirement. *See* Minn. R. 4601.1800 (stating that "cause of death information," as contained in a fact and cause of death certificate pursuant to Minn. R. 4601.2550, subp. 2 (2007), may only be provided "by a physician, coroner, or medical examiner"), 4601.2100, subp. 9 (requiring notarized approval from the medical examiner to amend "cause of death" information) (2007).

diction over a declaratory-judgment action, is a question of law, which we review de novo. *Cincinnati Ins. Co. v. Franck,* 621 N.W.2d 270, 273 (Minn.App.2001).

## A. Justiciable controversy and multiple respondents

Appellants seek four different declarations, naming five different respondents. They seek to establish that: (1) the Hennepin County Sheriff's Office insufficiently investigated Hoeft's death and prematurely released Hoeft's patrol car and service weapon to St. Louis Park; (2) both the City of St. Louis Park and the St. Louis Park Police Department improperly failed to preserve Hoeft's service weapon and patrol car; (3) the Hennepin County Medical Examiner's Office incorrectly concluded that Hoeft's death was a suicide; and (4) Hoeft's death was accidental.

The first two declarations concerning the Hennepin County Sheriff's Office, City of St. Louis Park, and the St. Louis Park Police Department are of a different character from the latter two declarations. The claims of an insufficient investigation and the failure to preserve certain evidence are essentially ancillary to appellant's ultimate claim: that Hoeft's death was an accident and the medical examiner should amend the death certificate to properly reflect this conclusion. As such, we address these two declarations separately.

■ Appellants have made no showing that they have a right emanating from a legal source to a declaration that respondents City of St. Louis Park and St. Louis Park Police Department improperly failed to preserve evidence concerning Hoeft's death, despite the conclusion of the formal investigation. Appellant's disapproval of respondents' conduct, without more, does not create a genuine conflict in tangible interests. *See Thuma v. Kroschel,* 506 N.W.2d 14, 21 (Minn.App.1993) (stating

that because the appellant's action was "solely limited to a judicial declaration that [the defendant] acted ultra vires" in his capacity as mayor, the two parties did not have adverse interests creating a genuine conflict), *review denied* (Minn. Dec. 14, 1993). Appellants are essentially requesting judicial condemnation of respondents' actions. But such a desire, by itself, cannot support a justiciable controversy. This particular declaration is more properly characterized as a potential spoliation issue that appellants would raise before the district court in a hearing on the merits. *See generally Patton v. Newmar Corp.,* 538 N.W.2d 116, 118–19 (Minn.1995) (affirming, in a spoliation case, the "sanction" of the exclusion of expert testimony regarding automobile that had since been destroyed).

■ The same analysis and conclusion apply regarding the requested declaration *that the Hennepin County Sheriff's Office* prematurely relinquished Hoeft's service weapon and squad car. We again can find no basis for concluding that this declaration is asserting a right emanating from a legal source, creates a genuine conflict in tangible interests, or would compel the medical examiner to alter Hoeft's death certificate. Thus, if appellants' claim regarding the purported inaccuracy of Hoeft's death certificate presents a justiciable controversy at all, it is only with regard to the Hennepin County Medical Examiner's Office and Hennepin County as the office's superior entity.

## B. A justiciable controversy and the accuracy of a third-party death certificate

Appellants' third and fourth declarations directly challenge the accuracy of the conclusion concerning manner of death on Hoeft's death certificate and seek to amend it to reflect that the manner of his

death was accidental. In order to determine whether these claims present a justiciable controversy, we will examine each element that must underlie such a controversy independently.

### 1. A genuine conflict in which the parties have adverse tangible interests

■ Appellants argue that, under the circumstances, the parties' disagreement over whether Hoeft's death was a suicide or accident creates the required conflict. Respondents assert that the medical examiner's office was disinterested in the manner of Hoeft's death, received no benefit from declaring it a suicide, and would lose nothing if this conclusion were found to be incorrect. Accordingly, they reason, the parties do not have adverse tangible interests resulting in a genuine conflict.

In this instance, appellants are seeking more than an abstract declaration by the district court; they are seeking a substantive change to an official state record that has potential legal implications if they are to attempt recovery under Hoeft's life-insurance policy. *Cf. Thuma*, 506 N.W.2d at 21 (stating that a declaration "limited" to the fact that the defendant "acted ultra vires" in his capacity as mayor did not create a genuine conflict in tangible interests). Respondent medical examiner's office correctly notes that it has no financial or other interest in Hoeft's death certificate. But we have found no authority suggesting that the required interest is tangible only if it is the equivalent of a quantifiably measurable benefit or loss.

Respondent medical examiner's office has not only a professional, but a statutory, duty to determine a decedent's manner of death. *See* Minn.Stat. §§ 390.32, subd. 10 (stating that a medical examiner "shall" file a death record if the county attorney does not conduct an inquest); .23 (stating that only a medical examiner can file manner-of-death information on a death certificate). Because the parties dispute the accuracy of the factual substance of an official state record that it is respondent's legal duty to create and that may have potential implications relating to recovery of life-insurance proceeds, we conclude that their interests are sufficiently adverse to create a genuine conflict between them.

### 2. Capable of specific resolution by judgment

■ Respondents next argue that a district court judgment would not settle the dispute between the parties and that appellants' claim presents hypothetical facts amounting to a request for an advisory opinion. We disagree.

Appellants are asking to be permitted to have a fact-finding proceeding based on actual events that have already occurred in an attempt to establish by a preponderance of the evidence that Hoeft's death was accidental. The hearing sought is founded on concrete facts gathered both during the authorities' formal investigation and appellants' own independent investigation. Presumably, in such a proceeding, exhibits would be introduced, theories would be presented, and witnesses would testify. At the conclusion, the district court would decide whether appellants have shown by a preponderance of the evidence that Hoeft's death was accidental, and, if it concluded that they have met their burden, order the medical examiner to amend the manner of death stated on Hoeft's death certificate. Contrary to respondents' assertion, there are no hypothetical facts to be found; a judgment would be based on evidence already gathered and would directly resolve the current dispute. Accordingly, this element of a justiciable controversy is also met.

### 3. Concrete assertion of a right emanating from a legal source

Where we cannot agree with appellants' claim is in their contention that they have a right emanating from a legal source to challenge the conclusions contained on Hoeft's death certificate. Appellants assert that this right is founded in both Minn.Stat. § 144.225 (2006 & Supp.2007) and article I, section 8, of the Minnesota Constitution. For the purpose of discussion, we will assume that Hoeft's death certificate incorrectly reflects that his death was a suicide.

Appellants first argue that the language in subdivision seven of Minn.Stat. § 144.225 provides them with a legal right to an accurate death certificate. The relevant statutory language states:

> The state or local registrar shall issue a certified birth or death record or a statement of no vital record found to an individual upon the individual's proper completion of an attestation provided by the commissioner:
>
> (1) to a person who has a tangible interest in the requested vital record. A person who has a tangible interest is:
>
> ....
>
> (iv) a parent of the subject[.]

Minn.Stat. § 144.225, subd. 7(a)(1)(iv).

Despite the absence of any language regarding accuracy, appellants contend that to interpret the provision otherwise creates the absurd result of entitling a person to a death certificate only, even if it is incorrect. Based on the statute's plain language, respondents argue that this statute grants appellants a tangible interest in obtaining a requested vital record but does not create an interest in the substance of the record.

The statute's clear and express language grants appellants an interest in obtaining whatever the substance of a "certi-fied death record" might be as defined by law. Thus, if a "certified death record" is defined as one accurately reflecting the manner of death, the statute requires the registrar to issue such a death record to appellants. If the registrar does not, appellants' statutorily granted right in obtaining such a record has been prejudiced. *See Thuma* 506 N.W.2d at 20 (stating that the legal right required to support a justiciable controversy need not amount to a cause of action, but it must consist of a "bona fide legal interest which has been, or ... is about to be, affected in a prejudicial manner" (quotation omitted)).

Minn. R. 4601.0100, subp. 4 (2007), defines a "certified death record" to mean the "portion of a registered death record, certified by a registrar, printed in a standardized format [pursuant to the relevant statutes] and subject to tangible interest requirements" of Minn.Stat. § 144.225, subd. 7. Based on this definition, a certified death record is dependent both on the further definition of a "registered death record" and the meaning of the term "certified." Minn. R. 4601.0100, subp. 20 (2007), states that the term "register" means "the acceptance of a birth or a death record by a registrar as the official record of the birth or death." The word "certify" is not defined in the relevant rules, but the meaning of the word is to "confirm formally as true, accurate, or genuine." *The Am. Heritage Dictionary of the English Language* 314 (3d ed.1992); *see also Sands v. Comm'r of Pub. Safety,* 744 N.W.2d 24, 26 (Minn.App.2008) (stating that words in a statute are given their plain meaning unless they embody some special meaning).

Thus, based on the synthesis of these various terms, the term "certified ... death record" as used in Minn.Stat. § 144.225, subd. 7(a), means a portion of the death record that the registrar con-

firms as a true and accurate reproduction of the one that the registrar accepted as the official record of death at the time that the record was filed. In other words, subdivision 7(a) only grants appellants a right to a copy of Hoeft's death certificate that the registrar attests is a true and accurate reproduction of the one it accepted from the medical examiner as Hoeft's official death record at the time the medical examiner filed the record. Because the registrar accepted as the official record of Hoeft's death a death certificate describing his manner of death as suicide, this is the "certified death record" that appellants are entitled to under the statute.

■ Appellants also argue that the Minnesota Constitution provides them with a right to a copy of an accurate death certificate independent of any such right found in Minn.Stat. § 144.225, subd. 7(a). They rely on article I, section 8, of the Minnesota Constitution, often called the Remedies Clause, which states: "Every person is entitled to a certain remedy in the laws for all injuries or wrongs which he may receive to his person, property or character, and to obtain justice freely and without purchase, completely and without denial, promptly and without delay, conformable to the laws."

■ But article I, section 8, of the Minnesota Constitution is not a separate and independent source of legal rights on which to base a declaratory-judgment action. The Remedies Clause protects and preserves rights and remedies recognized under the common law. *Hickman v. Group Health Plan, Inc.*, 396 N.W.2d 10, 14 (Minn.1986). Thus, the Minnesota Supreme Court has stated that "the Reme-

dies Clause does not guarantee redress for every wrong, but instead enjoins the legislature from eliminating those remedies that have *vested at common law* without a legitimate legislative purpose." *Olson v. Ford Motor Co.*, 558 N.W.2d 491, 497 (Minn.1997). Further, the Remedies Clause does not protect common-law rights and remedies "for which the legislature has ... provided a reasonable substitute." *Schermer v. State Farm Fire & Cas. Co.*, 721 N.W.2d 307, 316 (Minn.2006) (quotation omitted).

If there is a vested common-law right for the parents of a deceased child to bring an action to contest the conclusion concerning their child's manner of death on a death certificate, appellants have not produced evidence of this right. Neither has our own research revealed any evidence to support the notion that such a right existed at common law.

Appellants discuss what they characterize as the "common law presumption against suicide," contending that it applies to a medical examiner's investigation and the issuance of a death certificate. But the cases they rely on in making this argument are all distinguishable. The cases that appellants cite either involve a workers' compensation claim in which the relevant presumption was governed by specific statutory language, *see Beach v. Am. Steel & Wire Div. of U.S. Steel Corp.*, 248 Minn. 11, 15–16, 78 N.W.2d 371, 375 (1956), or involve civil actions to recover under a life-insurance policy in which the supreme court stated that an insurer asserting suicide as a defense against the plaintiff's attempt to collect under the policy has the burden to overcome the presumption against suicide.[4] None of these cases indi-

---

4. *See Ryan v. Metro. Life Ins. Co.*, 206 Minn. 562, 566, 289 N.W. 557, 559 (1939) ("[I]n ... life insurance cases where death from suicide, strictly speaking, is an exception from or

avoidance of the policy, the burden is upon the insurer."); *Kornig v. W. Life Indem. Co.*, 102 Minn. 31, 37, 112 N.W. 1039, 1041 (1907) (stating, in a life-insurance dispute,

cates that the presumption against suicide is some sort of substantive common-law right.

In sum, we conclude that neither Minn. Stat. § 144.225 nor the Remedies Clause of the Minnesota Constitution provides appellants with a right emanating from a legal source to correct what they contend is an incorrect death certificate.[5] Because this element of a justiciable controversy is not met, the district court properly dismissed their claims.[6]

## C. Policy implications

Appellants raise the concern that the failure to find a justiciable controversy here will insulate a medical examiner's conclusions, even if clearly erroneous, from correction. Initially, we note that Minn. R. 4601.2100 (2007) specifically provides for procedures to correct many aspects of inaccurate death records, although subpart nine of this rule does restrict a party's ability to amend "cause of death information," which includes manner of death, *see* Minn. R. 4601.2550, subp. 2 (2007), without the consent of the medical examiner. The Government Data Practices Act (GDPA) also allows challenges to the accuracy or completeness of certain types of data. *See* Minn.Stat. §§ 13.02, subd. 8 (defining an "individual" as the parent of an incapacitated person), 13.04, subd. 4 (allowing an "individual" to challenge the "accuracy or completeness of public or private data"), 13.10 (allowing the representative of a decedent to assert rights conferred to individuals under GDPA) (2006 & Supp.2007). Furthermore, we have interpreted the GDPA to allow correction of conclusions contained in the disputed data that are determined to be inaccurate. *Hennepin County Cmty. Servs. Dep't v. Hale*, 470 N.W.2d 159, 163–64 (Minn.App.1991), *review denied* (Minn. July 24, 1991). The issue of whether manner-of-death information contained in a death certificate can be challenged under the GDPA, however, was not raised or briefed by any party, and therefore we express no opinion on its application in this context.

To the extent that appellants are without the ability to challenge the accuracy of Hoeft's death certificate in court, the proper body to remedy this circumstance is not the judiciary but the legislature. We note that other jurisdictions have statutes that

---

that "where the cause of death is in doubt, there is a presumption of law against death by suicide."); *Lindahl v. Supreme Court I.O.F.*, 100 Minn. 87, 95, 110 N.W. 358, 361 (1907) (stating, in a life-insurance dispute in which a cause of death is not conclusively established, that "when the facts proved with reference to death admit equally of the inference that the death resulted from accident or suicide, the presumption is that death was accidental."); *Sartell v. Royal Neighbors of Am.*, 85 Minn. 369, 373, 88 N.W. 985, 987 (1902) ("[I]n an action upon an insurance policy, where the defense is suicide, the burden of proving it is upon the party so alleging; also that ordinarily, in the absence of proof that death resulted from other than accidental or natural causes, suicide will not be presumed."); *Hale v. Life Indem. & Inv. Co.*, 61 Minn. 516, 519–20, 63 N.W. 1108, 1108–09 (1895) (stating, in a life-insurance context, that the burden is on the party asserting suicide to prove death in this manner and that suicide will not be presumed).

5. We express no opinion on whether there may be other grounds, not asserted by appellants, which would allow a party to utilize the Uniform Declaratory Judgment Act to correct purported inaccuracies contained in a death certificate.

6. Respondents have also asserted that Minn. Stat. § 541.06 (2006)—the statute of limitations regarding actions taken by a medical examiner—bars appellants' claim and that compelling a medical examiner to amend a death certificate would be a violation of the separation of powers. Because we conclude that appellants' declaratory-judgment action does not present a justiciable controversy, we do not address those claims.

directly allow a challenge to the accuracy of a death certificate in court. *E.g.,* Ohio Rev.Code Ann. § 313.19 (West 2008). While we are sympathetic to appellants' frustration and the related hardships that continue to burden them, we are constrained by the limited nature of our judicial role. *See Tereault v. Palmer,* 413 N.W.2d 283, 286 (Minn.App.1987) (stating that "the task of extending existing law falls to the supreme court or the legislature, but it does not fall to this court"), *review denied* (Minn. Dec. 18, 1987).

## II.

Appellants' declaratory-judgment action was filed in district court on February 14, 2007. Appellants were unaware of Hoeft's life-insurance policy until they were provided with a copy on April 25, 2007. On May 1, 2007, appellants moved to amend their complaint to include allegations relating to this policy and to name the insurer, Prudential, as a defendant. The district court denied the motion, concluding that the amended complaint would not present a justiciable controversy.

 After a responsive pleading has been served, a party may only amend a complaint by leave of the court. Minn. R. Civ. P. 15.01. But the district court shall liberally permit a party to amend a complaint, unless the adverse party would be prejudiced. *Rosenberg v. Heritage Renovations, LLC,* 685 N.W.2d 320, 332 (Minn.2004). Regardless, a district court has wide discretion in permitting or denying a party leave to amend its complaint, and we will not reverse its decision absent an abuse of this discretion. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993).

 Because appellants are intended third-party beneficiaries of Hoeft's life-insurance policy, they have a legal right to pursue payment under the policy. *See generally Hickman v. SAFECO Ins. Co. of Am.,* 695 N.W.2d 365, 369 (Minn.2005) (stating that a person retains certain rights relating to an insurance contract to which he is the intended beneficiary even though he is not a direct party to the contract). But the legal right emanating from Hoeft's life-insurance policy is not to a death certificate accurately describing the manner of his death. The right granted by the policy is to monetary compensation if the terms contained in the policy are met. Appellants' possession of this right does not affect the analysis of whether a justiciable controversy underlies their declaratory-judgment action.[7] Accordingly, the district court acted within its discretion by denying appellants' motion to amend their complaint. *See Ag Servs. of Am., Inc. v. Schroeder,* 693 N.W.2d 227, 235 (Minn.App.2005) (stating that "courts can deny motions to amend when the additional claims cannot withstand summary judgment.").

## DECISION

Appellants have failed to demonstrate that they have a right emanating from a legal source to challenge what they contend to be the medical examiner's incorrect conclusion concerning their son's manner of death on the death certificate. Therefore, the declaratory-judgment action does not present a justiciable controversy, and no jurisdiction exists to adjudicate the merits of the claim. The district court properly denied appellants' motion to

---

**7.** Assuming Hoeft's life-insurance policy contains the standard suicide exclusion, the medical examiner's classification of Hoeft's death as a suicide will undoubtedly be relevant evidence in regard to whether this exclusion can be invoked. But the medical examiner's opinion as to the manner of Hoeft's death is in no way conclusive, and appellants are free to litigate this factual issue in any action brought to recover under the policy.

amend the complaint and properly dismissed appellants' action.

**Affirmed.**